WILLIAM R. BORDERS

*v.*

H. A. KATTLEMAN.

*Filed at Mt. Vernon May 9, 1892.*

1. FRAUDULENT REPRESENTATIONS—*as a ground for setting aside an exchange of property.* In this case, which was on bill to set aside an exchange of property on the ground of fraud, the holder of a certificate of deposit of $2000 in a bank was induced to exchange the same for a worthless note and mortgage held by the defendant, on his representation that the mortgaged premises were worth $2800, and that one-third of the land was cleared and improved, when in fact there were but eight or nine acres improved and the entire tract of but little value. He also led the complainant to believe that the bank was insolvent, which was untrue, and urged the latter to act promptly if he wished to save himself from loss, and procured others to tell the complainant that the land was valuable property and a good security for the mortgage debt: *Held*, that for the untrue representations of the defendant the contract of exchange was properly set aside.

2. SAME—*when vendee may rely on representations of vendor.* Where a sale is made of property at a distance, so that the purchaser has not the means at hand of ascertaining the truthfulness of the vendor's representations, the vendee may rely upon their truth, and have redress if they are shown to be materially false.

3. FALSE REPRESENTATIONS—*when presumed to be fraudulent.* It has been held that where the representations of a vendor relate to facts which must be supposed to be within his knowledge, proof of their falsity is a sufficient showing of his knowledge of their falsity. And so a party selling property is presumed to know whether the representations he affirmatively makes in respect of it are true or false. If he knows them to be false it is a positive fraud, and if he makes them without knowing them to be true, for the purpose of inducing another to act upon them, it in equity amounts to fraud.

4. SAME—*not material that one making them knows them to be false.* On bill to set aside or rescind a sale and purchase on the ground of untrue representations, it is immaterial whether the party making them knew them to be false, or made an assertion of a material fact without knowing it to be true, for the reason that the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Randolph county; the Hon. GEORGE W. WALL, Judge, presiding.

Messrs. KOERNER & HORNER, for the appellant:

Matter of opinion is no fraud. 1 Story's Eq. Jur. sec. 197. A false assertion or representation of value is matter of opinion. 2 Kent, 485; *Allen* v. *Hart*, 72 Ill. 104; *Schramm* v. *O'Connor*, 98 id. 539; *Rogers* v. *Higgins*, 57 id. 244; *Warren* v. *Doolittle*, 61 id. 171.

Equity will not interpose as to a matter of opinion or fact equally open to both. 1 Story, sec. 191.

Where a party has no right to place reliance on the representations of the opposite party, and it is his own folly so to do, the contract can not be avoided on account of fraud. 1 Story's Eq. Jur. 199; 2 Kent, 484.

A person must use ordinary care to guard against fraud. *Schwabacker* v. *Riddle*, 99 Ill. 343.

If one capable of taking care of his own interests makes a bad or losing bargain, he can receive no relief unless deceit has been practiced against him. *Nœtling* v. *Wright*, 72 Ill. 390; *Miller* v. *Craig*, 36 id. 109; *Van Horn* v. *Keenan*, 28 id. 448.

In the absence of trust or confidence a court of equity will only relieve for the non-disclosure of those facts which one party is under some legal or equitable obligation to communicate to the other, and which the other has a right not merely *foro conscientiæ*, but *juris et de jure*, to know. 1 Story, sec. 207; *Fish* v. *Cleland*, 33 Ill. 238.

In the absence of fraud and express guaranty the buyer buys at his own peril. *Kohl* v. *Lindley*, 39 Ill. 195.

If the purchaser chooses to judge for himself, and does not avail himself of the knowledge open to him, he can not be heard to complain of deceit. *Tuck* v. *Downing*, 76 Ill. 71.

The vendor hath a clear right to extol the superior quality of the subject matter to procure a good price, and if he refuses

7—142 ILL.

to warrant quality, and requires the other party to examine for himself before making the contract, such other party can not be heard to complain. *Fauntleroy* v. *Wilcox*, 80 Ill. 477.

False statements by the vendor as to value, good qualities, or price he has been offered for it, constitute no cause of action. *Nœtling* v. *Wright*, 72 Ill. 390.

The extolling of the value of land to the highest point the credulity of the opponent will bear is not fraudulent misrepresentation or deceit. *Miller* v. *Craig,* 36 Ill. 109.

Fraudulent misrepresentations by a third party, in the absence of conclusive proof of collusion, will not set aside the conveyance. *Schramm* v. *O'Connor*, 98 Ill. 539; 105 id. 496.

If the misrepresentation is not to a material point, or the other party did not trust to it, or it is equally open to the inquiries of both, or in regard to which neither party could be presumed to trust the other, then there is no reason to interfere on account of fraud. *Tuck* v. *Downing*, 76 Ill. 71.

The false statement of the vendor as to the price paid by him is of no avail, in the absence of a fiduciary trust. *Banta* v. *Palmer*, 47 Ill. 99.

To rescind a contract on account of fraud the testimony must be of the strongest and most cogent character, and the case a clear one. *Walker* v. *Hough*, 59 Ill. 375.

Mr. H. CLAY HORNER, for the appellee:

*Simplex commendatio non obligat.* But if any artifice, trick or act is resorted to, to mislead,—if there is any sailing under false colors,—the rule is different. 2 Kent, 482-484, and notes; *Kohl* v. *Lindley*, 39 Ill. 195; *Fauntleroy* v. *Wilcox*, 80 id. 477; *Adams* v. *Soule*, 33 Vt. 545; *Griffin* v. *Farrin*, 32 Minn. 475; *Hicks* v. *Stevens*, 121 Ill. 196; *Witherwax* v. *Riddle,* id. 145; Story's Eq. Jur. secs. 201, 251.

Words of caution to examine the land and inquire into matters do not relieve appellant. *Hicks* v. *Stevens*, 121 Ill. 196; *Witherwax* v. *Riddle*, id. 145; Pomeroy's Eq. sec. 896.

A representation may be by act or artifice, as well as words. "It may consist of conduct alone, of external act," when through this means it is intended to convey the impression or produce the conviction that some fact exists, and such result is a natural consequence of the acts. Pomeroy's Eq. sec. 877.

The verbal representations as to the danger of loss by appellee of the amount of his certificate of deposit were material, and intended to influence his conduct, and did do so. They were false, and that is sufficient to warrant the relief. Pomeroy's Eq. secs. 898, 928.

The misunderstanding as to the amount of land cleared,— forty acres being represented as cleared when in fact only eight acres were clear,—should warrant the relief sought, especially in view of the misrepresentations as to its being rented. Pomeroy's Eq. sec. 853; *Denny* v. *Hancock*, L. R. 6 Ch. 1.

The great inadequacy of price requires slight proof of fraud to justify the relief sought. Story's Eq. secs. 251, 246.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a bill in chancery by appellee, against appellant, Borders, to set aside and rescind a sale of property on the ground of fraud practiced by appellant upon appellee, whereby the latter was induced to part with his property in exchange for a comparatively worthless note and mortgage of a third party.

About the first day of July, 1884, appellee deposited in the banking house of Borders & Boyle $2000, taking a certificate of deposit therefor, payable in six months after date, at five per cent interest per annum. A few months thereafter the firm became embarrassed, and was dissolved by the retirement of Boyle. A new firm was formed, composed of James J. Borders and the appellant, who, for a valuable consideration, agreed to indemnify Boyle against all debts and liabilities of the late banking firm. Shortly after the maturity of the certificate of deposit, appellee applied to appellant, at the bank,

for payment of said certificate, who then, as the weight of · proof tends to show, stated to him that he, appellant, had a tract of land in Randolph county, worth $2800, which he had just sold and conveyed to one Crozier at that price; that Crozier had paid $700 in cash, and given his promissory note to him, appellant, for $2142, secured by mortgage on the land. It is also shown that he represented to appellee that the land was well worth $2800, and was ample security for the note, which would be promptly paid at its maturity. He advised appellee, as appellee testifies, to go and see Crozier, who, he represented, was well posted in respect of the land. The proofs leave but little, if any, doubt that the sale of the land to Crozier was not a sale in good faith. It appears, also, from the testimony, that appellee did call on Crozier for information, and was assured by him that he, Crozier, had in fact bought the land for $2800, and given a mortgage on the same to appellant, to secure a note of $2142. Appellant also, it seems, represented this tract of land had forty acres cleared and under cultivation, but the proof shows there were only eight or nine acres cleared on the tract. Appellant also represented to appellee, as the chancellor found from the evidence, that the firm of Borders & Boyle was so embarrassed, financially, as to endanger the loss of his money deposited with that firm; that he told appellee that he did not want to see him lose anything, and advised him to take the Crozier note and mortgage in exchange for his certificate of deposit, as the only sure means of protecting himself from loss. It is only just to say that appellant denies most of these alleged representations, or that he was guilty of deceiving appellee in respect of the value or nature of the land.

Appellant knew that James J. Borders, one of the partners in the firm of Borders & Boyle, was perfectly solvent, and that the new firm, of which appellant was a member, had obligated themselves to Boyle, the outgoing partner of the firm of Borders & Boyle, to protect him from all the liabilities of the late

firm, which, of course, included appellee's certificate. Appel- lee not closing at once with the terms offered, appellant wrote him, urging speedy and prompt action in the matter. He wrote: "We are settling very fast with our depositors in this way. Delay is dangerous. * * * I could have used the note offered you, (Crozier note,) and can do so yet. If you want it on the terms offered, to-wit, trade my note, for you to give me an order on Crozier for difference, which order, if not paid, shall not bind you, and you to become owner of full face of note and interest,—which terms if satisfactory, put your name on it without recourse, and send same to me, and I will send you note and mortgage endorsed in same way, mortgage duly recorded. Answer by return of mail. * * * I will take pleasure in showing you the land at any convenient time. I am too busy now, besides the ground is covered with snow, and you could not judge of the quality of the soil. I can not put this matter off—time is very precious with me now."

It is shown by the witness Stout that appellant told him he was about to sell this land to a man named Kattleman, and that if the latter cornered witness, and asked anything about the value of the land, for witness to put the price up. After Borders had sold the note to appellee, this same witness asked appellant how he came to sell the land for the price he did, and appellant replied, as is testified, that he "had got hold of a man that had more money than brains," and also said, in reply to a remark by the witness that Crozier would never pay the note, "of course, that is the calculation."

Most of the material representations shown by the evidence to have been made by appellant to appellee to induce the purchase of the Crozier note and mortgage are shown to have been untrue. Some of them, at least, if the evidence is to be credited, appear to have been made under circumstances strongly tending to charge appellant with knowledge of their untruthfulness,—or, at least, he occupied such a position as to lead to the presumption of his knowledge of their falsity.

He admits that he knew that J. J. Borders, one of the firm of Borders & Boyle, was perfectly solvent at the time it is shown he was endeavoring to induce appellee to believe that the firm was insolvent, and that he was in danger of losing his money. He had owned the land in question some time before the pretended sale to Crozier, professed to be familiar with it, and must be held to have had notice of its value.

The point is made that if the means were at hand by which appellee might have satisfied himself as to the truth or falsity of the representations, he was bound to do so, and failing to avail of such means he is not entitled to the relief sought. If appellant could make a defense based upon appellee's credulity and faith in appellant's representations, it could not prevail here. It appears that appellee did try to see the land before concluding his purchase from appellant; but, it being covered with snow, it could not, as stated by appellant in his letter, be properly examined. And, moreover, appellee was assured by appellant and Crozier, to whom the land had been conveyed, that the land was of the value of $2800, and that practically one-third of it was cleared and improved. Appellant says in his letter, as has been seen, that he will take pleasure in showing appellee the land at any convenient time; that he was too busy then, and that no proper judgment could be formed by his personal inspection of it at that time. While willing to show the land at some convenient time in the future, he was unwilling to delay concluding the transaction with appellee. He wrote: "I can not put this matter off. If you do not want the note, say so, and I will place it elsewhere." He wanted an answer by return mail—time was exceedingly precious to appellant then. Under such circumstances it would be in the highest degree unconscionable to permit appellant to take advantage of the fact that appellee gave credence to his word and relied upon his statements as true. In such case the party will not be relieved from the consequences of his false representations because the person thereby injured

trusted him, and parted with his property upon false representations of fact which he assumed to know to be true.

Where the sale is of property at a distance, so that the purchaser has not the means at hand of ascertaining the truthfulness of the vendor's representations, the vendee may rely upon their truth, and have redress if they are shown to have been materially false. (*Smith* v. *Richards,* 13 Pet. 26; *Maggart* v. *Freeman,* 27 Ind. 531; *Harris* v. *McMurray,* 23 id. 9; *Ladd* v. *Pigott,* 114 Ill. 647; *Savage* v. *Stevens,* 126 Mass. 207.) Here, as it appears, appellee did not have the ability to make any proper examination of the land without further time. Appellant, it would seem, was imperious in his demand that the transaction be closed at once, having first induced appellee to believe, as before stated is shown by the evidence, that he was in danger of losing his money unless he took the Crozier note and mortgage.

Nor is it important that it should be affirmatively found that the untrue representations should have in fact been known to appellant to be false. It is well settled that it is immaterial whether a party misrepresenting a material fact knows it to be false, or makes the assertion of the fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other. Story's Eq. Jur. sec. 193; 2 Pomeroy's Eq. sec. 877; Bigelow on the Law of Fraud, 410, *et seq.;* Cooley on Torts, (2d ed.) 582; *Thompson* v. *Lee,* 31 Ala. 292; *Railroad Co.* v. *Ting,* 63 N. Y. 653; *Allen* v. *Hart,* 72 Ill. 104; *Fauntleroy* v. *Wilcox,* 80 id. 477; *Hicks* v. *Stevens,* 121 id. 186. So it has been held, that where the representations relate to facts which must be supposed to be within the defendant's knowledge, proof of their falsity is a sufficient showing of his knowledge that they were false. (Cooley on Torts, 583; 109 Mass. 593; 62 N. Y. 319.) And so, a party selling property is presumed to know whether the representations he affirmatively makes in respect to it are

true or false. If he knows them to be false it is a positive fraud, and if he makes them without knowing them to be true, for the purpose of inducing another to act upon them, it in equity amounts to fraud. *Miner* v. *Midberry*, 6 Wis. 295; *Smith* v. *Richards, supra; McFarran* v. *Taylor*, 3 Cranch, 370; *Glasscock* v. *Minor*, 11 Mo. 655.

Taking the evidence on the part of appellee, supported by the letters of appellant and proof of extrinsic facts, we are unable to say that the chancellor was not justified in finding that appellee was induced to part with his certificate of deposit by the statements and representations of appellant of matters materially affecting the transaction, and which are shown to be untrue. All fraud and untrue statements, and that he made any untrue representations, are denied by appellant, and his version of the transaction is consistent with his honesty and good faith, but in the conflict we think the preponderance of the evidence is with appellee, and sustains the material allegations of the bill. The decree of the circuit court will accordingly be affirmed.

*Decree affirmed.*