GEORGETTE E. COOLIDGE *et al.*

*v.*

J. FOSTER RHODES *et al.*

*Opinion filed October 25, 1902.*

1. SALES—*when representations by a vendor of stock are not opinions.* Representations by a director of a corporation that the stock he is selling is fully paid, as it purports to be, and that the entire stock of the corporation, including the increased capital stock, had been paid for in cash at its full face value of $100 per share, are statements of fact and not opinions, and if known by the vendor to be false, are ground for relief in equity to the vendee.

2. SAME—*when vendor has knowledge of falsity of his representations.* A director of a corporation capitalized for $250,000 who knows that $100,000 of the stock subscription is fictitious and not paid for, and who participates in a scheme to increase the capital stock, which increase and the fictitious stock are turned over to the stockholders at three dollars per share, must be held to have notice that his representation that all stock had been paid for at its face value and is non-assessable is false in fact, and not a mere opinion as to the legal effect of the various acts of the corporation.

3. SAME—*when the representation that stock is good and valid is false.* Representation by a director in a corporation that all the capital stock, including increased capital, is good and valid and fully paid, is false where he knows that the vote to increase the capital stock was not a two-thirds vote, and that the affidavit to the certificate of increase, which was sworn to before him, was false.

4. LACHES—*when defense may be taken advantage of by demurrer.* If the defense of *laches* appears upon the face of a bill it may be taken advantage of by demurrer.

5. SAME—*laches not imputed to one ignorant of the facts.* Laches can not be imputed where the bill for relief alleges that complainant had no knowledge of the facts until three weeks before filing the bill, if there are no circumstances alleged in the bill which should have put an ordinary person upon inquiry.

6. SAME—*when bill need not allege facts showing cause of complainant's delay.* An averment in a bill that knowledge of the facts did not come to the complainant until a certain period before filing the bill is an allegation of fact, which is traversable and sufficient without an allegation of the facts and circumstances explaining why the information did not reach complainant at earlier period.

*Coolidge* v. *Rhodes*, 96 Ill. App. 17, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

COLLINS & FLETCHER, for plaintiffs in error:

The increase of the stock, and the five hundred shares issued in pursuance of said increase, were each illegal and void, for the reason that less than two-thirds of all the capital stock voted for said increase and the certificate of said increase was false. Therefore the representation of Rhodes that the stock was good and valid stock was fraudulent. Rev. Stat. 1874, p. 254; *Lincoln* v. *New Orleans Ex. Co.* 45 La. Ann. 729; *Tube Works* v. *Machine Co.* 139 Mass. 9; *Railway Co.* v. *Sneed*, 99 Tenn. 1; *McNulta* v. *Bank*, 63 Ill. App. 593; 164 Ill. 427; *Reed* v. *Machine Co.* 141 Mass. 454.

Fifteen hundred shares of stock were sold by the corporation for three dollars per share. Therefore the representation that every dollar of the stock of the company had been taken and paid for in cash at its full face value was fraudulent. *Coleman* v. *Howe*, 154 Ill. 458.

Fifteen hundred shares of the stock were sold by the corporation for three dollars per share, and, assuming

the validity of the increase of stock, were subject to assessment to the extent of ninety-seven dollars per share. Therefore the representation that all of the stock in the company was fully paid and non-assessable was fraudulent. *Coleman* v. *Howe*, 154 Ill. 458; *Alling* v. *Wenzel*, 133 id. 264; *Webster* v. *Upton*, 91 U. S. 65.

The representations were false and known to Rhodes so to be. Even though the falsity of his statements was not known to Rhodes, that fact would not defeat the equitable remedy of plaintiffs in error. *Smith* v. *Richards*, 13 Pet. 26; *Arkwright* v. *Newbold*, 17 Ch. Div. 320; *Borders* v. *Kattleman*, 142 Ill. 96; *Lockridge* v. *Foster*, 4 Scam. 569; 1 Story's Eq. Jur. sec. 193; 2 Pomeroy's Eq. Jur. sec. 885, *et seq.; Turner* v. *Ward*, 23 U. S. 391; *Wilson* v. *Carpenter*, 21 S. E. Rep. 243; *Moore* v. *Cross*, 26 S. W. Rep. 122; *Smith* v. *Brecker*, 53 N. W. Rep. 250; *Field* v. *Morse*, 75 id. 58; *Martin* v. *Hill*, 41 Minn. 337; 1 Cook on Corp. (4th ed.) sec. 356.

A. B. JENKS, for defendants in error:

The claim of plaintiffs in error for any relief whatever is barred by the Statute of Limitations of five years. The substantial relief sought is a return of the consideration paid for the stock, to be accomplished by a cancellation of the deed of conveyance of the real estate, or by a money decree for the value of such real estate, if the defendants have parted with the title thereto. The case presented is one of concurrent jurisdiction at law and in equity, in which the rule is, that lapse of time which will bar an action will also bar relief in equity, even though the particular relief sought is of exclusively equitable cognizance. *Manning* v. *Warren*, 17 Ill. 267; *Castner* v. *Walrod*, 83 id. 171; *Hancock* v. *Harper*, 86 id. 445; *Bonney* v. *Stoughton*, 122 id. 536; *Quayle* v. *Guild*, 91 id. 378; *School Directors* v. *School Directors*, 105 id. 653; *Horne* v. *Ingraham*, 125 id. 198; *Hawley* v. *Simons*, 157 id. 219.

There is no allegation of fraudulent concealment of the cause of action within section 22 of the Limitation

act. *Campbell* v. *Vining*, 23 Ill. 525; *Beatty* v. *Nickerson*, 73 id. 605; *Means* v. *Jenkins*, 18 Ill. App. 41; *Conner* v. *Goodman*, 104 Ill. 365.

The question of *laches* may be raised, and the bar of the Statute of Limitations may be interposed by demurrer to a bill in equity. *Furlong* v. *Riley*, 103 Ill. 628; *Fulton* v. *Northern College*, 158 id. 333; 12 Am. & Eng. Ency. of Law, p. 609, and cases cited.

The representations which are alleged by the bill to be untrue are no more than expressions of opinion upon matters of law, which opinions, although unsound, upon well settled principles afford no ground for relief in equity by way of rescission. *Crocker* v. *Manley*, 164 Ill. 282; *Fish* v. *Cleland*, 33 id. 239; *Brady* v. *Cole*, 164 id. 116.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Georgette E. Coolidge and Walter G. Coolidge, her husband, plaintiffs in error, filed their bill in the circuit court of Cook county against J. Foster Rhodes and Margaret A. Rhodes, his wife, the defendants in error, for the rescission of a contract by which J. Foster Rhodes transferred capital stock to Georgette E. Coolidge in consideration of the conveyance of a lot by plaintiffs in error to Margaret A. Rhodes, and to cancel said conveyance. Defendants in error interposed a general demurrer to the bill, which the court sustained, and plaintiffs in error, being content to stand by their bill, elected to do so, and the bill was dismissed. The Branch Appellate Court for the First District affirmed the decree, and the writ of error in this case was sued out to review the judgment of the Appellate Court.

The ground for asking rescission of the contract of sale and cancellation of the conveyance was misrepresentation and fraud on the part of the defendant J. Foster Rhodes with respect to the character of the capital stock which constituted the consideration. Counsel for plain-

tiffs in error confess that the bill is not a model of equity pleading, with the saving clause that it was not filed by them. We agree with them that the bill is not well drawn, and may add that there would have been much less confusion and ground for argument as to its sufficiency if the facts relied upon had been stated in a clear, concise and orderly manner. However, an analysis of the bill exhibits the following averments of fact, which, for the purposes of the demurrer, are admitted to be true:

On September 13, 1885, the complainant, Georgette E. Coolidge, was the owner of the lot in question and agreed to sell it to the defendant J. Foster Rhodes for $7800 in cash. He represented that he owned stock in the Traders' Safe and Trust Company, a corporation of this State; that the stock was good and valid, full paid and non-assessable; that the stock was paying a dividend of between twelve and fourteen per cent; that the dividends had been so large that the corporation had increased its capital stock from $250,000 to $300,000, and that every dollar of the stock of the corporation, both the original and increased stock, had been taken and paid for to the corporation in cash, at its face value. He was a director in the corporation. Georgette E. Coolidge, relying upon these representations and believing them to be true, agreed to accept $7800 in said stock for the lot, and on September 30, 1885, J. Foster Rhodes delivered to her certificates for seventy-eight shares of the stock, of the par value of $7800, made out in her name, and she, with her husband, the complainant Walter G. Coolidge, executed a deed for the lot to the defendant Margaret A. Rhodes, wife of J. Foster Rhodes, for the stated consideration of $10,000. J. Foster Rhodes purchased the premises on his own account, and the conveyance was made to his wife in trust for his sole benefit. The representation that the stock was good and valid, full paid and non-assessable, was untrue, and so known to be by said J. Foster Rhodes. The original capital stock was fixed

at $250,000, but only $150,000 was subscribed and paid for. One thousand shares, amounting to $100,000, were subscribed for by Frederick S. Eames, who claimed to have subscribed for the corporation with the understanding that he should not be held on his subscription, and the subscription was so treated by the corporation. The company was indebted $4500 on its building and had a bonded debt of $100,000. J. Foster Rhodes was a director of the corporation from August 5, 1884, to January 10, 1888. This being the situation, a stockholders' meeting was called by the board of directors, of which J. Foster Rhodes was one, to increase the capital stock. The meeting was held August 18, 1885, and twelve hundred and ten votes were cast in favor of increasing the capital stock from $250,000 to $300,000. There were then twenty-five hundred shares of the original stock. E. W. Shirk, president of the company, made and filed a certificate, subscribed and sworn to before J. Foster Rhodes, as notary public, that at least two-thirds of all the votes represented by the whole stock of the corporation voted for the increase. This certificate was recorded, and J. Foster Rhodes knew it to be untrue. After the stockholders' meeting a directors' meeting was held, at which J. Foster Rhodes was present and took part as a director, and it was then resolved that the one thousand shares subscribed for by Eames, together with the five hundred shares to be issued to increase the stock, should be sold for three dollars per share, the existing stockholders to have the first option to purchase at that price. The fifteen hundred shares were issued and distributed among the stockholders, and they paid three dollars per share of $100 for it, surrendering their old certificates and receiving new ones of two shares for each share surrendered. The corporation received but $4500 for stock of the par value of $150,000. J. Foster Rhodes was the owner of two hundred and fifty-five shares of paid up stock, and surrendered his old certificate and received a new one

for five hundred and ten shares. The stock delivered to Georgette E. Coolidge for the lot was a part of the five hundred and ten shares so issued to him. He was an active member of the board of directors and had full knowledge of all the proceedings; knew the number of votes cast for the increased stock, and that the certificate was false. He was one of the movers in the scheme to increase the stock and to distribute the original and increased stock at three dollars per share. The complainants first learned of the facts of the fraudulent increase, and that the stock was not fully paid for, within three weeks previous to filing the bill. Georgette E. Coolidge had received in dividends on the stock $838.50, and she brought the stock and these dividends into court and tendered them to the defendants.

The facts alleged and admitted by the demurrer to be true are, that the defendant J. Foster Rhodes sold to the complainant Georgette E. Coolidge $7800 of the capital stock of a corporation as paid up stock which was not in fact paid up, although issued as such, and that he participated in the issue. This was a fraud on the purchaser of the stock. (Cook on Stock and Stockholders, sec. 350.) The subscription of Eames was a fictitious and fraudulent one, not paid nor intended to be paid by him, and it amounted to $100,000,—two-fifths of the entire capital stock. That stock was issued to the other stockholders by virtue of a resolution of the board of directors, in which J. Foster Rhodes participated, to be paid for at three dollars per share. The proceeding was fraudulent on its face, and the stock was unpaid to the extent of $97 per share. (*Coleman* v. *Howe,* 154 Ill. 458; *Sprague* v. *National Bank of America,* 172 id. 149.) The corporation had creditors and the unpaid balance could be reached. The same thing is true of the $50,000 of capital stock issued as an increase, and in addition to that, the proceedings for the increase were illegal and void. Section 3 of the act authorizing an increase of capital stock

provides that votes representing two-thirds of all the stock of the corporation shall be necessary for the adoption of the proposed change. (Hurd's Stat. 1899, p. 443.) An increase of capital stock can only be made by a vote representing two-thirds of all the capital stock. No additional stock could be created, except by complying with the statute. *McNulta* v. *Corn Belt Bank*, 164 Ill. 427.

Defendants in error contend that the representation that the stock was full paid and non-assessable amounted to no more than an opinion on a legal question whether the steps taken by the corporation were sufficient to give the stock that character. There are cases, where the facts are truthfully stated and are understood by both parties, in which a statement with respect to their legal effect may be a mere opinion on a matter of law, but the assertions of J. Foster Rhodes set forth in the bill are not in the nature of a conclusion of law. It certainly is not a question of law whether he had paid $100 for a share of stock or paid three dollars on it. The stock was issued to him, and he participated in the whole proceeding, and knew, as a matter of fact, that the certificate made by the president and sworn to before him was false in its facts. His assertion that his stock was full paid and that the entire stock of the corporation had been paid for in cash to the corporation at its full face value was not an opinion but a representation as to facts. According to the bill, he told his vendee that there had been paid into the treasury of the company the sum of $300,000, and the effect of that was that she would become the owner of seventy-eight shares out of three thousand shares in a paid up capital of that amount. Instead of becoming a shareholder in capital of $300,000 she became a shareholder in capital of little more than half that. The representations were false and fraudulent, both as to the amount of the capital stock and the amount of money which the company had received for it. It would not be permissible, under the di-

rect allegations of the bill, to indulge in imaginings that he might have regarded the stock as paid for in the increased value of the corporate property. It was original capital stock to the extent of $100,000, and none of it had the character of a stock dividend, or could have that character under the resolution. The false representations were of material facts relating to the capital and assets of the company and affecting the value of the capital stock. They were representations which Georgette E. Coolidge might properly assume to be within the knowledge of J. Foster Rhodes, who made them. They were not matters of mere general commendation of the stock, nor as to facts that would not be supposed to be known by him. They were not unreasonable or unnatural, and the bill shows no facts which would arouse suspicion in her mind or require her to make an independent investigation to ascertain whether he was telling the truth. Under such circumstances she had a right to take him at his word. (2 Pomeroy's Eq. Jur. sec. 891.) It is not always necessary, in order to charge a vendor in equity with fraud, that he should know his statement to be false, if he has no good and reasonable ground to believe it to be true and the consequences are the same to the vendee as if he had such knowledge. (2 Pomeroy's Eq. Jur. sec. 885; *Lockridge* v. *Foster*, 4 Scam. 569; *Hicks* v. *Stevens*, 121 Ill. 186; *Borders* v. *Kattleman*, 142 id. 96.) But in this case the facts alleged show that J. Foster Rhodes did know the representations to be false; that they were made with the intention they should be acted on by the purchaser; that she did act upon them, and that she did suffer an injury in consequence.

The most important question in the case is whether complainants are barred by *laches*. Where this defense appears upon the face of the bill it may be taken advantage of by demurrer, either special or general. (*Kerfoot* v. *Billings*, 160 Ill. 563.) The transaction took place on September 30, 1885, and the bill was filed on July 1, 1891.

Complainants first learned the facts upon which their rights depend, within three weeks before filing the bill. *Laches* cannot be imputed to one who is ignorant of the facts and for that reason has failed to assert his rights. (*Middaugh* v. *Fox*, 135 Ill. 344; *Sutherland* v. *Reeve*, 151 id. 384.) If the averment is true, the complainants are not guilty of *laches*. In *Henry County* v. *Winnebago Swamp Drainage Co.* 52 Ill. 299, an averment that knowledge of the facts did not come to the complainants until within a certain period before filing the bill was held to be a clear and concise statement of a fact that was traversable, and sufficient without an allegation of the facts and circumstances tending to explain why the information did not reach complainants at an earlier period. It is true that where the question of *laches* is involved, if there are facts which would put a person of ordinary prudence upon inquiry, the complainant will be chargeable with such knowledge as would have been obtained upon such inquiry; but there is nothing in the bill in this case which shows anything to excite the attention of complainants or call for an inquiry into the transaction. The stock was issued as full paid stock, and there is nothing in the bill from which we can say that they remained in ignorance through their fault or want of diligence, or that they ought to have started an investigation to ascertain whether the representations were false. The corporation had paid dividends on the stock, and there is nothing appearing in the allegations of the bill to excite suspicion on the part of complainants. The bill, when tested by general demurrer, was sufficient to call for an answer, and the circuit court erred in sustaining the demurrer.

The judgment of the Appellate Court and the decree of the circuit court are reversed, and the cause is remanded to the circuit court with directions to overrule the demurrer.                    *Reversed and remanded.*