**H. W. Cooper, Complainant, v. Empire Security Company et al., Defendants and Appellees, on appeal of Carrie A. Cooper et al., Administrators of the Estate of H. W. Cooper, deceased, Appellants.**

**Gen. No. 27,735.**

1. FRAUD AND DECEIT—*when knowledge of falsity of representations not necessary.* False representations, made to complainant to induce him to purchase certain corporate stock, that the stock in question was fully paid and nonassessable, that it was the property of the corporation, and that the corporation was in a prosperous condition, are fraudulent, even though the salesman who made them did not know them to be untrue, especially where their falsity could have been ascertained by such salesman upon inquiry.

2. FRAUD AND DECEIT—*evidence of fraud in sale of corporate stock.* Fraud in the sale of corporate stock to complainant is shown by evidence that a stock salesman employed by such corporation represented to complainant that the stock was fully paid and nonassessable, was the property of the corporation and that the company was in a prosperous condition, where the evidence shows that a major part of the stock was assessable and was not fully paid but was part of a fictitious issue to one of the promoters, that at least 130 of the 200 shares involved did not belong to the corporation but were equitably owned by two of the directors with the legal title thereof in a third director, such stock having been fraudulently issued to such directors, and that the corporation

was not in a prosperous condition but was practically insolvent.

3. FRAUD AND DECEIT—*right of recovery where false representations not sole inducement.* The fact that complainant's purchase of corporate stock was made after he had inquired of other persons who had bought such stock as to the affairs of the corporation does not defeat his right to recover the purchase price paid by him and to have his name removed from the books as a stockholder on the ground that the salesman who sold him the stock made false representations as to material facts, where the evidence shows that complainant relied upon such stock salesman's statements and believed them to be true, and bought the stock on the strength of such statements.

4. FRAUD AND DECEIT—*materiality of representations.* Representations that corporate stock bought by complainant was fully paid up and nonassessable, the property of the company and had never been issued and that the company was in a prosperous condition are representations of material facts, and where they are false and induced complainant to purchase such stock they afforded complainant ground for rescinding the subscription, recovering the purchase price, and for a decree removing his name as a stockholder of such corporation.

5. CORPORATIONS—*liability of corporation for fraudulent representations of its stock salesman.* A corporation which employs a stock salesman to sell its corporate stock is liable to purchasers of such stock for fraudulent representations by such salesman which induced the purchase of the stock, where it accepted the subscriptions secured by him.

6. CORPORATIONS—*liability of directors for fraud in sale of corporate stock.* Directors of a corporation who were parties to fictitious issues of stock to themselves, which stock was subsequently sold by a stock salesman employed by the corporation to sell the stock so issued as that of the corporation, and who profited individually as the result of such salesman's fraudulent representations, are liable to one who was defrauded by such representations for the full amount paid by such person for the stock in question.

7. FRAUD AND DECEIT—*right to equitable relief against fraud.* A person who has bought corporate stock on false representations is not limited to an action at law to recover the amount paid for such stock with interest when he also seeks equitable relief, therefore he may resort to equity for such relief and also to have his name removed from the books of the company as a stockholder.

8. EQUITY—*when amendment of bill is properly allowed.* It is not error to permit plaintiff to amend a bill to recover the purchase price of certain corporate stock sold to plaintiff by fraudulent misrepresentations and to have plaintiff's name removed from the list of stockholders by alleging th t, after discovery of the

fraud, complainant demanded the return of his money, and also to permit him to plead a tender of the certificate of stock and a dividend received on part of such note, after the master's report recommending dismissal of the bill has been filed and the master has gone out of office.

9. RESCISSION AND CANCELLATION—*when restoration or tender thereof before suit unnecessary.* Complainant's failure to tender to defendants, before filing suit, the return of a dividend received by him on corporate stock is not fatal to a recovery by him in a suit to rescind a sale of the stock made to him through fraudulent representations, and the offer to return the amount thereof at the trial is sufficient.

Appeal by complainant from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Reversed and remanded with directions. Opinion filed December 5, 1922. Rehearing denied December 18, 1922. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** This is an appeal from a decree of the circuit court of Cook county, entered January 28, 1922, sustaining the report of the master and dismissing complainant's bill for want of equity.

In the year 1917, H. W. Cooper resided at Moline, Illinois, where for many years he had been engaged in business. On November 28, 1917, he filed this bill of complaint in said circuit court against the Empire Security Company, a South Dakota corporation, having its principal office in Chicago, Illinois (hereinafter referred to as the Empire Company), Charles B. Little, P. M. Starnes, Louis H. Grimme and the Vincent Trust, a business trust registered under the laws of the State of Massachusetts but having an office in Chicago, praying that his purchase of 200 shares of stock of the Empire Company (which purchase he had made from it for the sum of $12,500 on the alleged false and fraudulent representations of one E. C. Brewer, its authorized agent) be decreed to have been obtained through fraud and deceit; that the sale be set aside; that he be paid back said sum with interest, and that the Empire Company be decreed to accept a surrender

of the certificates representing the stock; and that his subscription therefor ''be canceled and his name removed from the books of said Empire Company as a stockholder.''

After stating the facts as to the organization of the company and the increase of its capital stock, complainant alleged, in substance, that on April 3, 1917, at Moline, Illinois, he purchased 100 shares of the preferred and 100 shares of the common stock of the company upon the representations made by its authorized representative, viz.:

(1)   That said stock was all fully paid and nonassessable;

(2)   that said stock all belonged to and was the property of said company;

(3)   that the company was in a prosperous condition, and

(4)   would continue to pay dividends on its preferred stock, as the affairs of the company were in the hands of competent and trustworthy men;

that, relying upon the representations made as to the prosperous condition of the company, and that said stock was fully paid and nonassessable, and that it belonged to the company, and, therefore, that the amount he paid for the stock would be paid to the company and be used by it in conducting its business, he decided to, and did, purchase said shares of stock, paying therefor the sum of $12,500, which funds were received by the company; that within ten days prior to the filing of this bill of complaint he learned that the representations which induced him to purchase the stock were false; that he also learned that said common stock did not belong to the company, but was owned by one P. M. Starnes, a director of the company, that the $2,500 which he paid therefor was immediately given by the company to said Starnes, and that 30 shares of said preferred stock were the property of one Louis H. Grimme, also a director; that had he known the true facts concerning said stock and the affairs of the com-

pany he would not have purchased any of said stock, and that in making the purchase he relied upon the truthfulness of the statements made by said authorized representative, and believed the said stock was fully paid and nonassessable, and had been paid up in an honest and business-like manner, and that the capital stock of the company represented money or money's worth.

Complainant further alleged in substance that, after making the payment of $12,500, he received from the company two stock certificates, one certifying that he was the owner of 100 shares of preferred stock, fully paid and nonassessable, and the other certifying that he was the owner of 100 shares of common stock, fully paid and nonassessable; that on September 25, 1917, he received written notice (copy attached to bill and made a part thereof) that a special stockholders' meeting of the Empire Company would be held on September 27 to consider a proposed plan of liquidation or consolidation of the company with the Vincent Trust; that at this time he was not aware of the facts relative to the organization of the Empire Company, or that its business affairs through mismanagement had become involved; that said plan (copy attached to bill and made a part thereof) was adopted at said meeting, and the assets of the Empire Company were thereafter turned over to said Vincent Trust; and that since ascertaining the falsity of the statements which induced him to purchase the stock, complainant demanded of the Empire Company and of said P. M. Starnes that they repay to him said sum of $12,500, together with interest, and also tendered to the company and said Starnes the two certificates, but that both the company and Starnes refused to receive the stock or to return said sum. No charge of fraud is made against the Vincent Trust.

Said written notice is dated September 22, 1917, is signed by the Empire Company, by its president,

Louis H. Grimme, and is addressed to complainant at Moline, Illinois. In addition to the formal notification of the special stockholders' meeting, it is stated therein that "the executive committee of the board of directors of this company have been considering for some considerable time a proposition from the Vincent Trust, * * * to consolidate the two institutions by the transferring of the property and business of this company to the Vincent Trust, and taking trust certificates, common and preferred, in the Vincent Trust in exchange for the property and business," and that the "executive committee * * * have concluded to recommend such consolidation." Said proposed plan is in the form of a written proposal, addressed to the Empire Company, dated September 20, 1917, and signed by the Vincent Trust by its president. It is provided therein that the acceptance by the Empire Company of the proposition "is to constitute a contract between us," and such acceptance is written thereon by said Empire Company, by said Grimme, its president, under date of *September 21.* The Vincent Trust offers "to purchase all of the assets and good will" of the Empire Company, "subject to its liabilities, as listed in an audit made by Arthur Young & Company, as of June 30, 1917," and a supplementary audit to be made by them as of September 22, 1917, and in payment therefor agrees "to issue our preferred and common trust certificates to your company, for the benefit of your preferred stockholders, the entire outstanding amount of which you have stated to be $256,000 fully paid, in the following amounts, to wit: Preferred Trust Certificates, $256,000, Common Trust Certificates, $256,000"; and also agrees to issue, in part payment for the good will of the Empire Company, "and for the benefit of the remainder of the common stockholders, $55,000 of our Preferred Trust Certificates and $50,000 of our Common Trust Certificates." Various conditions and guaranties are

mentioned which are to be performed by the Empire Company before the issuance of the trust certificates.

On December 28, 1917, the Vincent Trust filed its answer to complainant's bill in which it admitted that at said stockholders' meeting it was decided to sell the assets of the Empire Company to it; admitted that certain assets were conveyed to it; denied that it was still in possession of any of said assets, except such as had been purchased by it for cash or its equivalent or upon such as it had advanced money; and alleged that on November 27, 1917, it had rescinded said contract of September 21 "because of gross frauds, deceptions, misrepresentations and impositions practiced upon it by the Empire Company, its officers and directors, and had returned to said Empire Company, or its order, all of the assets" in its possession or control, except those upon which it had advanced money.

On April 8, 1918, the Empire Company, after its demurrer to complainant's bill had been overruled, filed an answer in which it denied that the complainant was induced to purchase his stock by any false representations, or that before the purchase any such representations as alleged were made to him, or that he was in any manner deceived. It, however, admitted that complainant had tendered back his stock to it and demanded the return of the money he had paid therefor, as alleged, and that the defendants, Little, Starnes and Grimme, controlled the Empire Company and directed its policy. It alleged that the proceedings at said stockholders' meeting "were in the interest and for the benefit of all stockholders and *creditors* of said company, and for the purpose of conserving the assets of the company, and *saving all possible* for the payment of debts and distribution among the stockholders."

The defendant, Grimme, although served with process, did not appear, and was defaulted.

On April 15, 1918, the defendants, Little and

Starnes, filed their answer to the bill, their demurrer having been overruled. In the answer they set forth at length the details of the organization of defendant corporation on August 5, 1913, and of the subsequent increase of its capital stock. They admitted that defendants, Grimme and Little, had been acting as directors and officers of the company since its organization; that W. D. Starnes, a son of the defendant, P. M. Starnes, was secretary of the company and had been acting as such since its organization; and that said P. M. Starnes became a director of the company in 1915. They denied that complainant was induced to purchase his said stock by any false representations, or that any such representations were made to complainant and relied upon by him as alleged. They admitted that at the meeting of the stockholders on September 25, 1917, the plan for the sale of the assets of the company to the Vincent Trust was presented, and that shortly thereafter said assets were conveyed to the Vincent Trust, pursuant to the agreement mentioned.

After replications had been filed, the cause was referred to a master in chancery to take testimony and report his conclusions upon the facts and the law. Considerable evidence both oral and documentary was introduced by complainant. No witnesses were called by any of the defendants. After all evidence had been introduced the bill was dismissed by stipulation as to the defendant, the Vincent Trust, without costs. The master, in his report filed in the circuit court on November 30, 1920, recommended that complainant's bill be dismissed for want of equity as to the remaining defendants. Objections to the master's report were ordered to stand as exceptions before the court, and by stipulation the master's fees were fixed at the sum of $500 to be taxed as costs.

Shortly prior to the entry of the decree, the complainant, on December 29, 1921, died, his death was

suggested, and the court ordered that the administrators of complainant's estate be substituted as complainants. The master's report was in all things confirmed and approved, and, in conformity with the master's recommendations, the bill was dismissed for want of equity, and it was further ordered that the defendants, Little and Starnes, recover from the complainant the stipulated master's fees of $500, theretofore advanced by them.

The following facts in substance are disclosed from the evidence: The Empire Company, incorporated in South Dakota in 1913, was engaged in Chicago in the business of loaning money on secured notes given for the purchase price of auto-trucks. Its organization was promoted by the defendants, Grimme and Little, its president and vice president. W. D. Starnes, a son of the defendant, P. M. Starnes, was secretary. Grimme, Little and P. M. Starnes controlled the company and directed its policy. Previous to its organization Grimme had been an officer in one of the banks in the loop district in Chicago. Its original authorized capital stock was $500,000, of which $200,000 was preferred and $300,000 common stock. Of this original common stock, $299,500 thereof was issued in August, 1913, as fully paid and nonassessable, to the defendant Little, in consideration of his conveyance to the company of forty acres of land, which he owned, in Lake county, Minnesota, "less one-fourth mineral rights reserved." The undisputed testimony showed that at the time of said conveyance there were no mines being operated within fifty miles of the land, and that its market value was not in excess of $4 per acre, or $160 for the tract, and that at the time of the hearing its market value was not in excess of $5 per acre, or $200 for the tract. In September, 1915, although $100,000 of the preferred stock remained unsold and unissued, the company increased its capital stock to $1,500,000, making its authorized preferred stock $500,000 and its

authorized common stock $1,000,000. The additional $700,000 of the common stock was issued to one H. H. Rich, fully paid and nonassessable, in consideration of his conveyance to the company of about eighty acres of land (also less one-fourth mineral rights reserved) adjoining the tract above mentioned, which had substantially the same and no greater market value per acre. In this transaction Rich acted on behalf of the defendants, Little and Starnes, who were then the equitable owners of the land as well as directors of the company, and who became the equitable owners of said $700,000 of common stock, except $2,500 of said stock which was given to Rich. The master found that the value of the first-mentioned tract at $299,500, and of the second-mentioned tract at $700,000, placed thereon by the directors, "was purely fictitious and did not express or represent its bona fide judgment."

E. C. Brewer, formerly a bond salesman in Chicago, was employed by the Empire Company to make sales of its stock. During the spring of 1917, he visited the cities of Moline, Illinois, and Davenport, Iowa, and made to prominent business men in those cities numerous sales of stock of both grades, at par for the preferred stock ($100 per share) and at $25 per share for the common stock of the par value of $100 per share, when purchased together. On April 2, 1917, Brewer called on complainant at Moline. He was well acquainted with him, having formerly sold bonds to him, and had his confidence. He urged the purchase of preferred and common stock as an unusually good investment. He mentioned the sales he had recently made to said business men, with some of whom complainant was acquainted, and suggested that the latter communicate with them. He spoke of Grimme, Little and Starnes as being the men in control of the company, and as being of the highest business standing. He offered the stock to complainant at the same price which he said he had sold it for to the other business

men in the neighborhood, viz., at $125 for a share of the preferred together with a share of the common, i. e., $100 for a share of the preferred and $25 for a share of the common. He represented that the stock was fully paid and nonassessable, that it was "Empire Company stock," i. e., the property of the company, and had not previously been issued to anyone, and that the company was in a sound and very prosperous condition. He explained in detail the business of the company, the returns made on the money loaned and the safety of the business against loss. He said the same things to complainant that he had said to said business men to whom he had recently sold stock. On the following day, April 3, Brewer again called on complainant. In the meantime complainant had made inquiries of said business men, as suggested by Brewer. He told Brewer that he had decided to purchase 100 shares of the preferred and 100 shares of the common, and he thereupon gave Brewer a check for $12,500, payable to the order of the Empire Company, and subsequently received from the company the two certificates. He testified in substance that in making said purchase he relied upon Brewer's representations as to the stock being nonassessable and as to its being before the sale to him the property of the company and not owned by other parties, and as to the prosperous condition of the company.

The common stock, for which complainant paid $2,500, was a part of the $700,000 of stock which had been issued to Rich as above mentioned. Of this $2,500 Brewer received $500 as a commission, and $1,000 was paid to Little and $1,000 to Starnes. Of the 100 shares of preferred stock, for which complainant paid $10,000, 70 shares were treasury stock, and 30 shares belonged to Grimme, who received from the company $2,700. The master in his report says: "It may be inferred that $300 went to Brewer as a commission. What became of the remainder of the money

($7,000) does not appear, but it went presumably into the treasury of the company.''

Complainant further testified that in July, 1917, he met Grimme and Starnes at the office of the company in Chicago; that both stated that they were aware of his purchase of said stock through Brewer, that Brewer had been a very successful salesman and was still selling stock, that the business of the company was in a very prosperous condition, and that Grimme stated that recently the company had made several successful deals which insured the payment of the October dividend on the preferred stock outstanding; that on September 25, 1917, he received the letter from Grimme relative to the special stockholders'. meeting; that after the proposed plan of liquidation, or consolidation of the company with the Vincent Trust, had been adopted, he, on September 28, wrote the company asking for further information and for a financial report; that he received a letter in reply (introduced in evidence) from Grimme, president, dated October 2, inclosing a copy of the plan, and promising to send the financial report later; and that about November 20 he came to Chicago, consulted an attorney and made further inquiries and on November 28 filed the present bill. At the hearing complainant introduced in evidence certain statements, issued by the company, showing its financial condition on June 30, and also on August 31, 1917. Complainant, on November 21, 1917, caused a tender of his two certificates of stock to be made to, and a written demand for the repayment of the $12,500 to be served upon, the company, through its secretary, W. D. Starnes, and to and upon the defendant, P. M. Starnes, at the company's office in Chicago, which tenders were refused.

BANGS & FRANKHAUSER, for appellants.

STEBBINS, GAREY, L'AMOREAUX & HURTUBISE, for appellees Charles B. Little and P. M. Starnes.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In his report, the master, in discussing the alleged representations made to complainant by the agent, Brewer, as shown in the above statement, found that representations Nos. 3 and 4 should not be considered; that No. 4 was a mere prediction as to the future, and that No. 3 (that the company was in a prosperous condition) had not been shown by the evidence to have been false; that as to representations Nos. 1 and 2 (that the stock was fully paid and nonassessable, and was the property of the Empire Company) the evidence failed to show "that Brewer made them without believing them to be true"; that "in order to constitute fraud, the statement must not only be untrue, but the party making it must know or believe it to be untrue"; that, furthermore, "the untrue statement must have been made for the purpose of inducing the injured person to act, and it must have been an inducing cause for said action in the sense that but for his belief in the truth of the statement he would not have acted"; and that the evidence failed to show "that Brewer's statement, that he was selling Empire Company's stock, was made by him for the purpose of inducing complainant to buy the stock in question, or that complainant's decision to buy it was induced by that statement." The master concluded, in substance, that fraud could not be predicated upon representations Nos. 1 and 2; that complainant was not entitled to rescind his purchase of the stock; and that, inasmuch as the relief prayed for by complainant depended upon his right to rescind, complainant's bill was without equity and should be dismissed.

It is contended by counsel for complainant that the master's conclusion of law, viz., that in order to constitute fraud, the statement must not only be untrue, but the party making it must know or believe it to be untrue, is erroneous. As applied to the facts in the

present record, we are of the opinion that it is. In 1 Cook on Corporations, sec. 140, it is said: "The well-established rule now is that a corporation cannot claim or retain the benefit of a subscription which has been obtained through the fraud of its agents." In 2 Pomeroy's Eq. Juris (4th Ed.), sec. 909, it is said: "It is very clear that when an agent, in doing the business of his principal, and acting within the scope of the authority conferred upon him, makes fraudulent representations or concealments with the knowledge or consent of his principal, expressed or implied, so that the act of the agent is virtually that of his principal, then the principal is liable in the same manner, to the same extent, and for the same remedies as though the fraud were committed by himself personally." In 1 Cook on Corporations, sec. 149, it is said: "Statements need not be intentionally false in order to amount to a fraudulent representation." And in the note to the text it is said: "Corporate agents, making representations in order to obtain subscriptions, are bound to know the truth or falsity of such statements." In 2 Pomeroy's Eq. Juris. sec. 887, it is said: "It is well settled in equity by an overwhelming array of authority that where a person makes a statement of fact, which is actually untrue, and he has at the time no knowledge whatever of the matter, he is chargeable with fraud, and his claim to have believed in the truth of his statement cannot be regarded as at all material." And, in sec. 888, the author states: "If a statement of fact, actually untrue, is made by a person who honestly believes it to be true, but under such circumstances that the *duty* of knowing the truth rests upon him, which, if fulfilled, would have prevented him from making the statement, such misrepresentation may be fraudulent in equity, and the person answerable as for fraud." In *Farnsworth v. Muscatine Produce & Pure Ice Co.*, 161 Iowa 170, 179, it is said: "Officers of corporations, who

hold out to individuals, or to the public, advantages which will accrue to persons who take shares in their corporation, and invite them to take shares on the faith of their representations, are bound to state everything with strict accuracy." As we understand the law of Illinois, it is in accord with the principles above stated. (*Allen v. Hart,* 72 Ill. 104; *Hicks v. Stevens,* 121 Ill. 186; *Borders v. Kattleman,* 142 Ill. 96, 103; *Coolidge v. Rhodes,* 199 Ill. 24, 32; *National Bank of Pawnee v. Hamilton,* 202 Ill. App. 516; *Rowe v. Phillips,* 214 Ill. App. 582.) In the *Borders* case, where a bill in equity was filed to rescind a sale of property on the ground of false and fraudulent representations of the defendant whereby the complainant was induced to part with his property in exchange for a comparatively worthless note and mortgage of a third party, the court, in sustaining a decree in favor of complainant, said (142 Ill. at p. 103): "It is well settled that it is immaterial whether a party misrepresenting a material fact knows it to be false, or makes the assertion of the fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other. * * * So it has been held, that where the representations relate to facts which must be supposed to be within the defendant's knowledge, proof of their falsity is a sufficient showing of his knowledge that they were false. * * * And so, a party selling property is presumed to know whether the representations he affirmatively makes in respect to it are true or false. If he knows them to be false it is a positive fraud, and if he makes them without knowing them to be true, for the purpose of inducing another to act upon them, it in equity amounts to fraud." In the *Coolidge* case, *supra,* where in a proceeding in equity it appeared that the stock of a corporation, which a director thereof sold upon his representation that it

was fully paid and nonassessable, was not fully paid, but was fictitious and fraudulent, the court said (199 Ill. at p. 32): "It is not always necessary, in order to charge a vendor in equity with fraud, that he should know his statement to be false, if he has no good and reasonable ground to believe it to be true and the consequences are the same to the vendee as if he had such knowledge." Counsel for the defendants, Little and Starnes, cite in their brief here filed the case of *Gillespie v. Fulton Oil & Gas Co.*, 236 Ill. 188, as sustaining the master's conclusion. In that equity case it was claimed that a certain oil lease had been obtained by fraud and misrepresentation, and our Supreme Court held (p. 206) that under the evidence the decree of the circuit court could not be sustained on the ground that the execution of said lease was procured through fraud and misrepresentation, or upon other grounds. In its opinion the court, citing Pomeroy's Eq. Jur. sec. 876, and quoting from the case of *Prentice v. Crane*, 234 Ill. 302, 307, said (p. 198): "A misrepresentation which will warrant a court of equity in setting aside a contract must contain the following elements: First, its form must be a statement of fact; second, it must be made for the purpose of inducing the other party to act; third, it must be untrue; fourth, the party making the statement must know or believe it to be untrue; fifth, the person to whom it is made must believe in and rely upon the truth of the statement; sixth, the statement must be material." But the court, in the portion of its opinion immediately following said quotation, seemingly founded its decision upon the fact that there was no proof in the record that the person to whom the statement was made believed it and relied upon it, and upon the further fact that the statement was wanting in the essential element of materiality. In the recent case of *Wisherd v. Bollinger*, 293 Ill. 357, 364, it was decided in substance that, where representations are false and mate-

rial and are relied upon by a party to his injury, a court of equity is justified in refusing specific performance of a contract for the exchange of lands, and that it is immaterial whether the representations were made without knowledge of the truth or with actual intent to deceive; and the court cited with approval the *Allen, Hicks* and *Borders* cases, *supra*.

In the present case, three of the representations or statements which complainant in his bill alleged Brewer made to him before he purchased the stock and were relied upon by him, are: (1) That the stock "was fully paid and nonassessable"; (2) that it "was the property of the Empire Company"; and (3) that the company "was in a prosperous condition." Each of these statements was a statement of a fact, and the evidence clearly shows that each was made for the purpose of inducing complainant to purchase stock in the company. Statement No. 1 was untrue, at least as regards the common stock. The attempted issuance to H. H. Rich of the 7,000 shares of the increased common stock, of which the 100 shares purchased by complainant were a part, as fully paid and nonassessable, for the consideration and in the manner above shown, was a fraud, and the stock was not fully paid and is assessable. (*Coleman v. Howe,* 154 Ill. 458, 469; *Coolidge v. Rhodes,* 199 Ill. 24, 30.) Statement No. 2 was untrue as to the 100 shares of the common stock, and as to 30 of the 100 shares of the preferred stock. The common stock purchased by complainant was equitably owned by the defendants, Little and Starnes, with the legal title thereto in Rich, and 30 shares of the preferred stock was owned by Grimme. And, after a careful review of the facts, as disclosed by admissions in the pleadings and by the evidence introduced on the hearing, including said financial statements, we think that statement No. 3 was untrue. While the evidence does not positively show that Brewer, when making the three statements, actually knew them to be un-

true, it does show that he made them without knowing them to be true and for the purpose of bringing about complainant's purchase, and that a previous investigation on his part would have disclosed to him the fact that they were untrue. And the evidence sufficiently shows, we think, that complainant believed in and relied upon the truth of all three of the statements. While it is a fact that complainant, as suggested by Brewer, made certain inquiries of parties to whom Brewer had recently sold both preferred and common stock, yet it is not essential that the false representations should be the *sole* inducement to complainant's decision to make the purchase. (2 Pomeroy's Eq. Juris., sec. 890; *Hicks v. Stevens,* 121 Ill. 186, 193.) On the question of the materiality of the representations, we are of the opinion that all three were material. (*National Bank of Pawnee v. Hamilton,* 202 Ill. App. 516, 521; *Coolidge v. Rhodes,* 199 Ill. 24, 32; *Cox v. National Coal & Oil Investment Co.,* 61 W. Va. 291, 295, 307; *Gray v. Reeves,* 69 Wash. 374, 377.) It is more than probable that complainant would have declined to make any purchase had Brewer told him that the stock offered for sale was not all treasury stock, and that the common was equitably owned by the defendants, Little and Starnes, and that 30 shares of the preferred was owned by Grimme. Brewer's representations are imputable to the Empire Company (*Southern Ins. Co. v. Milligan,* 154 Ky. 216, 223), whether they were authorized by the company or not, for, having accepted the result of his efforts, it must be held to have adopted the methods employed to achieve the results. (*Bloomquist v. Farson,* 222 N. Y. 375, 381.) And the defendants, Little, Starnes and Grimme, directors of and in control of the company, are also liable to complainant in this proceeding, for "all who get gain by fraud must bear the legal consequences of the wrong they do" (*Vreeland v. New Jersey Stone Co.,* 29 N. J. Eq. 188, 195). And their liabil-

ity is not limited to the sums of money they severally received (1 Cook on Corporations, sec. 156; *Cox v. National Coal & Oil Investment Co.*, 61 W. Va. 291, 312; *Endsley v. Johns*, 120 Ill. 469, 479). And complainant is not required to sue at law, but he may resort to a court of equity for relief. In his bill he not only asks for a recovery of the $12,500, with interest, but also that his name be removed from the books of the company as a stockholder. (See 1 Cook on Corporations, sec. 155; *Farwell v. Colonial Trust Co.*, 147 Fed. 480, 482; *Bosley v. National Machine Co.*, 123 N. Y. 550, 555.)

No brief has been filed in this Appellate Court on behalf of the Empire Company, but an elaborate brief and argument has, however, been filed on behalf of the defendants, Little and Starnes, and their counsel contend that fraud was not proved in this case to that degree of certainty required by the law. The master stated in his report that complainant's testimony "as to how he understood Brewer's statements" (viz., that the stock was fully paid and nonassessable, and that it was the property of the Empire Company) "is thoroughly confused and contradictory." Complainant was cross-examined at length by counsel for Little and Starnes, and while there is some confusion in his testimony, it is apparent, we think, that he relied on Brewer's false statements, and believed that the stock he purchased was nonassessable and also was treasury stock. Counsel argue, in substance, that complainant could not have been deceived, because, by purchasing common stock of the par value of $100 per share for $25 per share, he must have known that it was assessable, and if it was nonassessable it could not be the property of the company except under unusual circumstances. It is not unusual for stock in a private business corporation, previously fully paid to the extent of its par value in money or money's worth, to be sold in the open market or by private sale at a price much

below its par value. And it sometimes happens that stock in such a corporation, which has been fully paid for in money's worth, is returned into the treasury of the company for the purpose of being sold for cash, where the company needs more money for running its business. Considering the entire evidence, as disclosed in this record, we are of the opinion that, at the time of complainant's purchase of the stock in question, such false representations were made to him by Brewer, upon the truth of which complainant relied, as entitles him to the relief prayed for.

The defendants, Little and Starnes, have assigned cross errors to the effect that the court abused its discretion in allowing an amendment to a paragraph of complainant's bill on October 14, 1921, long after the master's report had been filed in court and after the master had gone out of office, and erred in sustaining complainant's exceptions to the answer of said defendants to said paragraph as amended. The allegations of said paragraph, as amended, were to the effect that, since ascertaining the falsity of the statements which induced him to purchase the stock, complainant demanded of the Empire Company and of P. M. Starnes that they repay him the $12,500, with interest, and "tendered and hereby tenders and offers to return to them and each of them the said certificates of stock, * * * and tenders and offers to return to the Empire Company the July, 1917, dividend on the preferred stock, to wit, $175," which was received prior to the discovery of the fraud, etc., but that both refused, etc. The amendment related to the tender of said July dividend of $175 (one-fourth of seven per cent on $10,000). We do not think that any error was committed by the court in the particulars mentioned.

Counsel for said defendants further contend that complainant's failure prior to the filing of the bill to actually tender said July dividend, which the proof showed he received on said preferred stock, is fatal to

a recovery. The offer to return the amount of the dividend was sufficient. (*Auman v. McKibben,* 179 Ill. App. 425, 436; 5 Pomeroy's Eq. Juris. sec. 2110; *Taylor v. Taylor,* 259 Ill. 524.) In the *Taylor* case, our Supreme Court said (p. 537): "If appellee was entitled to the relief prayed, appellant could be as effectually protected by giving him credit on the money decree rendered as if he had been tendered that sum before the bill was filed"; and further said (p. 539): "In *Stewart v. Stone,* 127 N. Y. 500, 28 N. E. Rep. 595, the court holds that one who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain."

Our conclusions are that the circuit court erred in dismissing the bill for want of equity as to the defendants, Empire Company, and Little, Starnes and Grimme, and that the decree should be reversed and the cause remanded with directions to the court to enter a decree against said defendants and in favor of complainants in accordance with the prayer of the bill, upon complainants' tendering in open court said two certificates of stock for cancellation, and giving credit to the defendants for the amount of said July dividend of $175, together with legal interest thereon from July 1, 1917; and it is so ordered.

*Reversed and remanded with directions.*

BARNES, P. J., and MORRILL, J., concur.