## Sarah J. Ames v. Jessie R. Thren.
### Gen. No. 4,596.

1.  FRAUD AND DECEIT—*what essential to maintenance of action for.*  In order to sustain an action for fraud and deceit, it must be shown that the representations made were false and were known to be false by the party making them or that they were representations of facts which the party claimed to know the truth about when in fact he had no knowledge whatever upon the subject.

2.  TITLE—*possession evidence of.*  Possession and claim of ownership of land is *prima facie* evidence of title.

3.  HUSBAND—*when competent as witness for wife.*  A husband is a competent witness for his wife in an action which concerns her separate property.

Action for fraud and deceit. Appeal from the Circuit Court of Winnebago County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1905. Reversed and remanded. Opinion filed March 10, 1906.

JAMES R. JAFFRAY and WILLIAM L. PIERCE, for appellant.

H. S. HICKS, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

On the 8th of January, 1903, appellant sold to appellee and conveyed by warranty deed of that date, for the expressed consideration of $5,000, lot 13 in block 37, Gregory's Addition to the city of Rockford. This lot lies immediately west of lot 14, which is in the southeast corner of the block. Eighth street runs north and south along the east side of lot 14 and Sixth avenue runs east and west on the south side of both lots 13 and 14. Both lots were occupied by residence buildings. At the time of the transfer of the property to appellee there was a fence between the houses located on lots 13 and 14. This fence was about three feet east of the east wall of the building on lot 13, which was a brick building. Appellee claims appellant represented to her before she purchased the property that the fence was on the line between the two lots and she claims to have discovered after paying for and taking possession of the property, that the line was in the neighborhood of three feet west of the fence and that the eaves of the building on her lot and the window copings projected over upon the lot just east of hers, which is owned and occupied by a family by the name of Ekeberg. Appellee brought this suit, which is an action on the case for fraud and deceit to recover damages. The declaration charges that appellant knew where the correct line was between lots 13 and 14, but for the purpose of deceiving and injuring appellee, fraudulently, falsely and knowingly, represented to her that the fence on the east side of the building was on the line between lots 13 and 14, and that the building was wholly on lot 13 and

three feet west of the east boundary line of said lot, that appellee had no knowledge of the location of the line and relied upon the representations, honesty and good faith of appellant, and was therefore induced to purchase the property and pay for the same the sum of $5,000.

The fence between the two lots was built in 1888. The Ekebergs built half of it and Mr. Roose, who then owned lot 13, built the other half. That portion built by the Ekebergs was next to Sixth avenue, which passed in front of the lot, and that built by Mr. Roose was in the rear. Years before that time there had been a fence entirely around lot 14 and Mrs. Ekeberg testifies the lot was so surrounded by a fence when she went upon it to live in 1883. It does not appear that prior to the building of the fence between lots 13 and 14 a survey was made to determine the true location of the line. Mr. Roose testified there was a cedar post on the south line of the lots the proper distance west of the fence on the east side of lot 14 to give the lot the proper width and the fence between his property and the Ekebergs was built on a line from this post. Some time in 1901 Hand, assistant city engineer of the city of Rockford, made a survey or measurement in the part of the city where the property in controversy is located, and claims to have located the line between lots 13 and 14 between two and three feet west of the fence. He drove an iron pin at the place he located as the line. That this action of the assistant engineer had been taken and that there was some discussion as to where the line was, was known to appellant before and at the time she sold the property to appellee. She had talked to some parties about it and made some inquiry as to whether there would be any trouble about it. This she did not disclose to appellee, and while she testifies she did not represent to appellee that the fence was on the line, she does not claim to have said anything to her about there being any controversy or misunderstanding as to where the line was. In this respect her conduct was not characterized by that frankness and sincerity that is to be expected of all persons acting honestly and in good faith.

There have been three trials of this case, the first one resulting in a verdict for plaintiff which on motion of defendant was set aside, the second one resulting in a verdict for defendant, which on motion of plaintiff was set aside, and the last one resulting in a verdict and judgment for plaintiff below, appellee here, for $950 from which this appeal is prosecuted. Appellant at the time she sold the property to appellee was, and during all the time she owned it, had been in possession of all the land west of the fence which separated her premises from the Ekeberg's, and so had her predecessors in title since the fence was built. Upon making the purchase appellee went into possession and has been in possession of the premises to the same extent up to the time of the last trial of this cause. There has been no physical interference with her possession nor any proceeding instituted to dispossess her of any part of the premises on the west side of the fence and it cannot be known from this record whether there ever will be. Under such circumstances we are of opinion that to justify a recovery the evidence as to the correctness of the location of the line by Hand should be clearer than we find it to be from the testimony in this record. Gregory's addition is in the northeast corner of section 26, and lies on the west side of the section line. There appears to be an addition to the city lying just east, called Porter's addition. The plat introduced in evidence of Gregory's addition does not appear to have been drawn to any scale and cannot therefore be relied upon in determining distances such as widths of streets, lots, etc. Hand, the assistant city engineer, is the only witness who testified to the location of the line being where he placed the iron pin west of the fence and his testimony is based upon a survey that we do not think would justify us in sustaining this verdict and judgment. He does not claim to have started in making the survey from any government or other known and established monument. He assumed that the section line running south from the northeast corner of section 26 was in the middle of Ninth street, and that Ninth street was 100 links wide. But this is not

shown by the plat. It may be if this assumption is correct
that the line is located where Hand claims it is, and it may
be also that his assumption with reference to the location
of the section line and the width of Ninth street is correct,
but surveys which determine the rights of parties to prop-
erty should be based on something more certain than as-
sumptions. Hand also found an iron pin or pins some dis-
tance from the lot in controversy and assumed they were
correctly placed to locate boundaries and from which sur-
veys might be accurately made. He testifies he knows some
of these monuments have been replaced and have been recog-
nized by county surveyors, but he also says he has no means.
of knowing whether an iron stake or pin he located was in
the same place that the original was. He testifies also that
an iron stake at the southeast corner of block 37 was placed
there at the instance of the city engineer, but that there
is no record of it and whether it was done after a survey
was made and in accordance with a line run from estab-
lished monuments does not appear. The county surveyor of
Winnebago county testified to making a survey in which
he located the line between lots 13 and 14 about sixteen
inches east of the line located by Hand. In making his
survey he attempted to find government monuments either
at the section corner or half section corner of section 26,.
but says he was unable to find the monuments. It appears
from the testimony that Hand was governed largely in his
survey by the plat introduced in evidence, which as we have
said was not drawn to a scale and does not show distances
correctly between lines. Upon a similar question our Su-
preme Court said in Village of Winnetka v. Prouty, 107
Ill., 218:

"An instrument of conveyance ought, upon its face, to
show at least enough to enable a competent surveyor to
find with absolute certainty, that which is assumed to be
conveyed. But how can a surveyor tell where the limits
of streets are unless he knows their width, or has before
him data from which he can ascertain it? It is not shown
by anything upon or connected with this plat, that we have.

been able to discover, what is the width of any of the
streets proposed to be laid out, much less whether it is
intended all the streets shall be of the same width, or what
width was proposed to be given to the particular street in
controversy. Some general inference, it is possible, might
be drawn from the width of streets in general, or from the
width of other streets known and established in the village,
but this is manifestly not sufficient. The width of the
streets of all villages, towns or cities is not necessarily the
same; nor are all of the streets in the same village, town
or city necessarily of the same width."

It is also to be borne in mind that appellant was not
a party to, nor so far as appears from the evidence, had
she any knowledge of the survey made by Hand until after
it was made. She testified she believed the fence to be
on the line at the time she sold the property to appellee,
and while she denies so representing it to her, she says if
the question had been asked her she would have told her
the fence was on the line because she believed it to be so.
Her possession and claim of ownership was *prima facie* evi-
dence of title. Anderson v. McCormick, 129 Ill., 308. We
have held in Smith v. Hoffman, 122 App., 198, and Love
v. McElroy, 118 App., 412, that in order to sustain an
action for fraud and deceit it must be shown that the repre-
sentations made were false and were known to be false by
the party making them, or that they were representations
of facts which the party claimed to know the truth about
when in fact he had no knowledge whatever about the sub-
ject.

On the trial a witness testified that he had occupied lot
13 prior to its sale to appellee as the tenant of appellant
and that while he so occupied it appellant and her husband
came to look at the property one day, and that appellant
said she wanted the fence on the west side of the lot torn
down so that she could get the land on that side that be-
longed to her, and spoke of the pins that had been set by
Hand. Appellant denied this conversation and offered her
husband as a witness to testify as to what was said between

her and the tenant at the time mentioned by him.   Appellee objected to his competency on the ground that he was the husband of appellant.   The objection was sustained and the witness was not allowed to testify.   In this the court erred.   The litigation concerned the separate property of the wife, and she would, if unmarried, have been the defendant in the case.   In such cases section 5 of the chapter on Evidence and Depositions makes the husband a competent witness.   See also McNail v. Zeigler, 68 Ill., 224; Obermann Brewing Co. v. Ohlerking, 33 Ill. App., 356.   All we need say with reference to the instructions complained of, is that the law requires appellee to prove the line to be in a different place from that represented to her by appellant and that with knowledge of this fact appellant falsely and fraudulently and knowingly ·deceived her as to the location of the line, and the jury should be so instructed.   For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*