## Chris Wetzel, Appellee, v. G. E. Colson, Appellant.

DECEIT—*what essential to recover in action for.* In an action for fraud and deceit it is necessary to aver and prove scienter. Averment and proof that the defendant could by the exercise of reasonable care have known, is not sufficient.

Appeal from the City Court of Mattoon; the Hon. GEORGE D. WILSON, Judge, presiding. Heard in this court at the November term, 1910. Reversed with finding of fact. Opinion filed May 26, 1911.

JOHN MCNUTT, for appellant; A. L. CHEZEM, of counsel.

BRYAN H. TIVNEN, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

The declaration in this case contains two counts designated in the record as the first count and the amended additional count. The first count alleges in substance that the plaintiff, on, etc., bargained with the defendant, at his request, to buy of him a certain horse at a certain price, to wit, the sum of $105; that the defendant for the purpose of inducing the plaintiff to purchase said horse at said price, then and there fraudulently and falsely warranted the said horse to be sound, whereas in truth and in fact the said horse was at the time of said warranty and sale thereof, unsound, and sick with a dangerous and contagious and infectious disease among horses known as glanders, which said facts were well known to the defendant at the time of the warranty by him of said horse as aforesaid; that relying upon the warranty of the defendant as aforesaid the plaintiff then and there purchased of the defendant the said horse and then and there gave to the said defendant his promissory note for the said sum of $105, which was then and there accepted by the defendant; that the defendant by means of the premises, on the day aforesaid, there falsely and fraudulently deceived the plaintiff on the sale of the said horse as aforesaid, and thereby the said horse afterward, to wit, on the day aforesaid, not only became of no use or value to the plaintiff, but also then and there communi-

cated the said highly dangerous and infectious disease known as glanders to other and different horses of the plaintiff and thereby they became valueless; and thereby also the plaintiff was then and there put to great expense in and about the feeding and taking care of and for the medical attention and medicine and for the necessary killing of the first mentioned horse in order to avoid further communication of the said disease of glanders, and for the disinfection of the premises of the plaintiff where said horse was kept, and for the destruction of property of the plaintiff necessarily consumed as having come in contact with said first horse and the said disease, which property was necessarily destroyed by the plaintiff for the purpose of preventing further communication of the disease; and for other further injuries and losses thereby sustained by it; to the damage of the plaintiff, etc.

The amended additional count is in substance like the first count, except that in addition to alleging as a ground of recovery that the defendant then and there well knew said horse was affected with glanders, it alleges that the defendant by the exercise of ordinary care on his part could have known of the same. To this declaration the defendant pleaded the general issue and upon a trial of the cause by a jury there was a verdict and judgment against the defendant for $478, to reverse which judgment this appeal is prosecuted.

On April 2, 1909, the plaintiff, a farmer residing near the city of Mattoon, purchased a mare from the defendant, who then conducted a large sales stables in said city and who had been engaged in the business of buying and selling horses and mules for twenty-five or thirty years.

The evidence bearing upon the issues here properly involved, considered most favorably for the plaintiff is substantially as follows: The plaintiff testified that when he was negotiating for the purchase of the mare he asked the defendant if she was sound and the defendant replied that she was absolutely sound except a little wire mark on her left fore leg; that he told the defendant that the mare did not look sound to him but looked as if she had the distemper and the defendant said she was all right, that he bought her down

south of a neighbor near his place, and sold her to be sound and a good worker, that she did not then have the distemper but had had it and had gotten over it; that upon that day the mare was in poor condition and ran a little at the nose and on the following day her legs were swollen; that a week later she was poor and running down, had a thick head and pimples all over her body which were breaking open, and that she had swelling in the jaws and underneath from her ears down to her throat latch; that in the latter part of May or the first of June following, she was running at the nose and bleeding and was just able to walk and he called in Dr. Hayward, a veterinary surgeon to examine her; that he then had nine other horses on his place; that subsequently Dr. Mills, another veterinary surgeon, was called in consultation to examine the mare and by his direction plaintiff's premises were quarantined and some of the horses kept separate and apart from the mare and two other horses who had disclosed similar symptoms; that the two veterinary surgeons finally diagnosed the disease with which the mare was affected as being glanders and she was killed on June 17; that at the time of the trial five horses belonging to him and who had been brought in contact with the mare were so sick as to be worthless; that he had given the defendant his note for $105 in payment for the mare.

H. A. Nockey, a witness called by the plaintiff, testified that he was present when the mare was purchased; that she was led out of the barn and trotted a short distance under the whip; that when she walked out of the barn she looked drowsy and stupid, did not walk upright, was thin and watering at her nose; that he mentioned that fact to the plaintiff, who said he did not think she looked right and was not in good condition; that the defendant said she was all right, that she might have had a cold or touch of distemper, but was all right then and that she was sound except the wire mark on her front foot.

Henry Furste, a witness for the plaintiff, who was also present when the mare was purchased, testified that the defendant got after her with a whip and drove her around about

two minutes; that the plaintiff said she was a little thin and the defendant said she had not had enough to eat and was starved, that all she wanted was something to eat and hard work; that both plaintiff and the witness said she didn't look just right and the defendant said: "She ain't got the distemper now, she had it but is over it; I insure her to be absolutely sound except wire cut."

Dr. Hayward testified that he first saw the mare on June 5, 1909, on the plaintiff's premises, and described in detail the various symptoms he then observed; that he directed the plaintiff to keep her apart from the other horses because she was infected with a highly contagious disease; that on June 10 he concluded that the mare was infected with glanders and reported the case to the State; that in his opinion the mare had glanders when she was sold by the defendant to the plaintiff. Dr. Mills testified that he examined the mare on June 14, and diagnosed the disease with which she was affected as glanders in malignant form, and that in his opinion the mare had glanders when she was sold to the plaintiff. Both of these witnesses called by the plaintiff as experts, testified that glanders was an unusual disease among horses and was very difficult of diagnosis in its early stages; that it could only be detected with any degree of certainty in its early stages by the use of the Malline test which could only be properly applied by a veterinary surgeon; that the symptoms of several of the diseases with which horses are commonly affected were almost identical with symptoms of glanders.

C. E. Newsby testified that he saw the mare in defendant's barn before the plaintiff purchased her and that she looked out of condition, rather thin and stood with head down; that her lips, nostrils and hind legs were swollen and her head looked thick along the side; that he thought she had symptoms of glanders.

D. S. Hutchinson, who saw the mare in defendant's barn before she was sold by the defendant, testified that she was thin in flesh, had a little discharge at the nose, and that he thought she had a cold or shipping fever.

In actions for fraud and deceit it is necessary to aver and

prove *scienter*. Cantwell v. Harding, 249 Ill. 354. The averment in the declaration that the defendant at the time he sold the mare to the plaintiff could by the exercise of reasonable care have known that she was affected with the infectious and contagious disease of glanders was not sufficient to support a recovery, and it was essential that plaintiff proved the averment in his declaration that the defendant knew the mare was so affected. A consideration of the evidence, taken most strongly for the plaintiff, clearly fails to establish the averment of *scienter*. The fact that the mare was affected with glanders was not ascertained or discovered for more than two months after she was sold, and then only by experts in the diseases of horses by the application of a test available only to such experts. True, some of the symptoms which were present in the mare when she was sold were common to a horse in both the chronic and acute stages of the disease known as glanders, but such symptoms were identical with the symptoms incident to many other diseases not of a serious character to which horses were subject. While the defendant may be liable in an action to recover damages for breach of warranty that the mare was sound, the evidence for the plaintiff considered alone is wholly insufficient to warrant a recovery under either count of the declaration.

Plaintiff introduced no evidence tending to show that defendant had any knowledge whatever of the symptoms of the disease known as glanders or of the disease itself. It is apparent from the entire record that the testimony of some of the witnesses to the effect that they thought the mare had glanders when she was sold was mere conjecture predicated upon the fact that the disease was subsequently diagnosed as glanders.

It is almost incredible that the defendant should have kept the mare in the same stable with his other horses, if, knowing the highly infectious or contagious character of the disease known as glanders, he knew that the mare was affected with said disease. The very natural motive of self interest excludes the probability of such conduct on his part.

The record of the trial in the court below is, in the lan-

guage of a late eminent practitioner at the bar of this court, "robust with error," but in the view heretofore expressed by us it is unnecessary to consider and determine the almost numberless errors assigned.

The judgment of the county court will be reversed with a finding of fact to be incorporated in the judgment of this court.

*Reversed with finding of fact.*

Finding of Fact: We find as an ultimate fact that at the time the defendant sold the mare in question to the plaintiff he did not know said mare was affected with glanders.