# Henry S. Rowe, Administrator, etc., Appellant, v. Louis R. Phillips et al., Appellees.

## Gen. No. 6,665.

1. ABATEMENT AND REVIVAL, § 54*—*what is power of court on death of sole plaintiff.* After the death of the plaintiff in the action in question and before a proper representative was in court, the court had no power to take any action in the case except such as would bring the representative before the court.

2. PLEADING, § 193*—*when surplusage not ground for special demurrer.* Surplusage, such as setting out irrelevant, immaterial and argumentative matter in a declaration, based on fraud and deceit, was not a ground for even a special demurrer.

3. PLEADING, § 367*—*what questions cannot be raised by motion to strike.* Those matters which can be raised by demurrer, such as insufficiency in substance or form, cannot be raised by a motion to strike a pleading from the files.

4. PLEADING, § 225*—*what new pleading, after sustaining of demurrer, cannot be filed.* A party cannot be permitted, after a demurrer has been sustained to his pleading, to file another pleading in the same or substantially the same language, and which does not obviate the defect in the previous pleading.

5. FRAUD, § 78*—*when declaration for fraud and deceit is defective.* A count in a declaration in an action for fraud and deceit which failed to aver that the defendants knew the representations to be false was defective, and the defect was not cured by averments that the defendants either knew the representations to be false or that if they had exercised reasonable care they would have found out that they were false; but other counts in the declaration were held sufficient under stated qualifications and modifications of the general rule.

6. FRAUD, § 84*—*when count in declaration for fraud and deceit in sale of corporate stock states cause of action.* A count in a declaration in an action for fraud and deceit in the sale of corporate stock stated a cause of action, which alleged in substance that plaintiff to the knowledge of defendants was 65 years old, infirm and illiterate and without experience in buying or selling stock; that one defendant was a banker in plaintiff's small town and had intimate knowledge of plaintiff's affairs and was her confidential adviser; that

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

such defendant entered into a conspiracy with the other defendant to swindle her; that both individuals represented that the corporate stock of $1,000,000 was fully paid up and that the stock was listed on the stock exchange and paid dividends; that the banker spoke highly of the other individual and the latter made like representations as to the corporation; that the plaintiff believed the banker's statements because of her confidential relations with him, and believed the other defendant's statements because of what the banker had said; that the representations were all untrue and known by each to have been untrue and that the stock was worthless; that after discovery of the fraud plaintiff tried to induce defendants to take the stock off her hands and tendered back the certificates.

7. FRAUD, § 22*—*when puffing corporate stock not permitted*. The rule that one selling property has a right to puff its value and that the purchaser will rely on such puffing at his own risk has no application to an aged and illiterate farmer woman who alleged that she was defrauded by her banker who was her confidential adviser, and by a person whom such banker highly recommended, and who conspired together to defraud her by inducing her to purchase worthless corporate stock.

8. FRAUD, § 22*—*when puffing not permitted*. Puffing is permitted, but not where a fiduciary relation exists between the parties.

9. FRAUD, § 70*—*when count in declaration for fraud and deceit not one in assumpsit*. Allegations in one of a number of counts in an action for fraud and deceit in the sale of corporate stock, that two of the defendants had promised plaintiff to reimburse her, did not make the count one in assumpsit which vitiated the whole declaration, as all that such averment meant was that the alleged promise was one of the inducements held out for the purpose of deceiving plaintiff and inducing her to invest in the worthless stock.

10. FRAUD, § 76*—*when declaration must aver that representations were false*. Review of authorities as to the modifications or qualifications of the rule that in an action for fraud and deceit the declaration must aver that the representations were false; and various counts in the declaration in question held sufficient.

Appeal from the Circuit Court of Marshall county; the Hon. T. N. GREEN, Judge, presiding. Heard in this court at the April term, 1919. Reversed and remanded. Opinion filed July 18, 1919.

F. W. POTTER and BARNES, MAGOON & BLACK, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

FRANK J. QUINN, HENRY E. JACOBS and DAILY, MILLER, McCORMICK & RADLEY, for appellees Louis R. Phillips and L. Edgar Jerome.

MR. JUSTICE DIBELL delivered the opinion of the court.

This is an action for fraud and deceit begun September 19, 1916, by Mrs. Ellen Rowe against Louis R. Phillips, L. Edgar Jerome and the Western Bankers Trust Company, hereinafter called the Trust Company, to recover damages for the sale by defendants to plaintiff, for $5,000, of preferred and common stock of said Trust Company alleged to be worthless. Phillips and the Trust Company were served with summons shortly thereafter. Jerome seems never to have been served, but at some time after the first declaration had been disposed of he appeared and pleaded. On September 20, 1916, the original declaration was filed. It contained four counts. Phillips filed a special demurrer thereto on October 2, 1916. The Trust Company filed a substantial duplicate of that demurrer on October 18, 1916. These demurrers were sustained as to the second, third and fourth counts, and overruled as to the first count, and plaintiff elected to abide by said second, third and fourth counts, and obtained leave to amend the first count, and to add three additional counts. On January 16, 1917, plaintiff filed an amended first count, and first, second and third additional counts to the declaration. Thereafter, the defendants (and whether that included Jerome, who had not been served, the record does not disclose) moved to strike said amended first count, and said first, second and third additional counts from the files. The Trust Company filed a like motion, and also a demurrer to the said pleading. On October 26, 1917, the court struck said last-named counts from the files. The plaintiff then took leave to amend the first count

and to file additional counts. On November 1, 1917, the plaintiff filed another amended first count, and four additional counts. On November 27, 1917, Phillips and Jerome filed a joint plea of not guilty, and a replication was attached thereto. Thereupon, the Trust Company moved to strike the amended additional counts from the files, and that motion was denied. On December 12, 1917, the Trust Company filed a plea of not guilty. On January 14, 1918, a special plea was filed of accord and satisfaction since the last term of court. The body of the plea purports to be by "the undersigned defendants." It is signed by Jerome and by Frank J. Quinn, attorney, and Quinn seems to have been attorney for both Phillips and Jerome, but not for the Trust Company. To this special plea plaintiff filed five special replications on January 18, 1918. Jerome filed a general and special demurrer to each of these replications on January 18, 1918, and the demurrer was sustained to the first, fourth and fifth special replications and was overruled as to the second and third special replications. On October 8, 1918, Phillips and Jerome entered a motion for leave to withdraw the plea to the last amended declaration, and to demur thereto. That motion was granted on October 8, 1918. No demurrer by said defendants seems to have been filed, but the case was treated as if such a demurrer had been filed by Phillips and Jerome, and on October 11, 1918, the demurrer was sustained, and plaintiff elected to stand by the declaration. Thereupon, on the same day, the death of plaintiff was suggested, and Henry S. Rowe, administrator of her estate, was substituted as plaintiff, and a judgment in bar was immediately entered against him, the judgment being in favor of "the defendant" and that he recover "his" costs in due course of administration. The administrator prayed and perfected this appeal. Apparently the Trust Company was no

party to that final demurrer, and it did not ask to withdraw its plea of the general issue. The plaintiff so understood it, for his appeal bond runs only to Phillips and Jerome. The Trust Company has not appeared in this court, the only briefs filed for defendants being for Phillips and Jerome. Apparently the case is pending against the Trust Company in the court below. We assume that the rights and liabilities of the Trust Company are not involved in this appeal, and therefore they will not be discussed.

The proceedings of the last day were exceedingly informal. The plaintiff was dead, and the demurrer was sustained to the declaration when there was no plaintiff before the court, if the clerk's record is correctly written, as we assume that it is. After the death of plaintiff, and before a proper representative of plaintiff was in court, the court had no power to take any action in the case except such as would bring such representative before the court. Leave was given to withdraw "the plea" when there were two pleas by at least one of the personal defendants, namely, the general issue and the special plea of accord and satisfaction. To this latter plea there were two replications standing, which had been held good upon demurrer. It was exceedingly informal, to say the least, to permit the withdrawal of that special plea, if such withdrawal was intended, while these replications stood to it. The judgment in form is in favor of one defendant only. If it was meant to be in favor of both Phillips and Jerome, plaintiff was entitled to have that appear, and to have the judgment show positively whose rights were fixed thereby.

Most of the demurrers in this record were exceedingly lengthy and were made so by setting out at great length many quotations from the declaration of matter which was alleged to be irrelevant, immaterial, and argumentative. Matter of that kind does not make a count defective, if enough remains to make a good

count. Surplusage is not a ground for even a special demurrer: 1 Chitty's Pl. 229; *Freeland v. McCullough,* 1 Denio (N. Y.) 414, on p. 427; 31 Cyc. 287. But other proper grounds of demurrer were stated therein.

The motion to strike the second declaration from the files set out much of the same matter and was based on many of the same grounds. A pleading may not be stricken from the files because of any want of formality which would make it obnoxious to a demurrer. Those matters which can be raised by demurrer cannot be raised by a motion to strike a pleading from the files. "A motion to strike a pleading from the files because insufficient in substance or form is contrary to all rules of pleading and practice, and the only mode of taking advantage of insufficiency is by demurrer." *Firestone Tire & Rubber Co. v. Ginsburg,* 285 Ill. 132, and cases there cited. Such action tends to deprive parties litigant of the right of amendment. Pleadings may be stricken from the files under certain circumstances, as for instance, if they are filed without leave of court where such leave is necessary, or where they are filed in violation of some order of court. We take it also that a pleading may be stricken from the files if it is a duplicate of a pleading which has previously been disposed of by demurrer. A party cannot be permitted, after a demurrer has been sustained to his pleading, to file another pleading in the same or substantially the same language, and which does not obviate the defect in the previous pleading. *Howlett v. Mills,* 22 Ill. 341; *Parks v. Holmes,* 22 Ill. 522; *McClure v. Williams,* 65 Ill. 390; *Bemis v. Homer,* 145 Ill. 567; *Grand Lodge v. Randolph,* 186 Ill. 89.

As to the portions of the respective counts which were quoted and set out in detail in the respective demurrers and motions to strike from the files, we ought further to say that most of those matters were properly included in the declaration and were germane to the plaintiff's cause of action, when considered in

connection with other portions of said respective counts. Said portions of said counts so set out in the demurrers and motions to strike from the files did not justify the rulings of the court thereon.

In an action for fraud and deceit, the general rule is stated to be that it is not enough to allege that the representations by which the fraud and deceit were accomplished were false, but it must also be alleged that the defendants who made them knew them to be false. *Cantwell v. Harding,* 249 Ill. 354, and cases there cited. Many of the counts in these declarations do not aver that the defendants knew the representations to be false, but aver that they either knew them to be false or that if they had exercised reasonable care they would have found out that they were false. These averments are not sufficient in such an action. *Wetzel v. Colson,* 162 Ill. App. 86. For lack of a sufficient allegation of scienter, some of the counts in these three declarations are defective. The second original count contains a sufficient averment of scienter as to Jerome, but Jerome did not appear in the case until long after a demurrer by the other defendants had been sustained to that count, and it seems to have been treated as not in the declaration as to defendant Jerome when he afterwards appeared. The first declaration contains no sufficient averment of scienter as to the defendants then before the court, within the general rule above stated.

The first additional count filed January 16, 1917, which was stricken from the files, in our opinion states a good case against Phillips and Jerome, the only defendants now before the court. It alleges the incorporation of the Trust Company and its employing Jerome as its agent to sell its capital stock. It states that plaintiff was then more than 65 years old; was without education; was barely able to read and write; had no experience in business or buying or selling stock in corporations; had nearly all her life followed

the occupation of a farmer's wife, on a farm in Marshall county, until about 5 years before that time, when she removed to the City of Henry with her husband because of their inability to continue farming on account of their age; and that she was at the time in question afflicted with failing eyesight, and on account of age was unable to hear with distinctness; and that all these facts concerning her disabilities were known to Phillips and Jerome before and at the time of these transactions. It is alleged that Phillips for more than 5 years last had been the cashier of the Henry National Bank doing business in the City of Henry; that Phillips had a large acquaintance with the citizens of Henry and vicinity and large opportunities to know their personal, financial and physical condition and affairs; that plaintiff and her husband had banked with that bank for more than 5 years and had disclosed to Phillips intimately plaintiff's personal, financial and physical condition and affairs; and that plaintiff during that time had had many business transactions with Phillips wherein she advised with Phillips as her counselor in matters relating to finance, and had had Phillips draw up and pass on many written instruments growing out of her transactions, and that thereby there had grown up between plaintiff and Phillips a relation of trust and confidence, and plaintiff relied upon and trusted Phillips implicitly in her financial affairs; and Phillips transacted for her through said bank a large part of her personal business; and that Phillips knew during all said time that a confidential relation existed between plaintiff and Phillips and that she relied upon him for advice in business matters. That count alleged that Jerome and Phillips entered into an understanding and conspiracy to swindle the plaintiff and deprive her of $5,000 in the manner thereinafter related. That count alleged that the Trust Company at that time had no business standing or rating or financial recognition, but

was only a stock-jobbing and stock-selling concern, having practically no assets and substantially no business; that on, to wit, June 15, 1914, Phillips and Jerome came to the home of plaintiff at Henry, and Phillips represented to plaintiff that Jerome was a reliable and honest business man; that he, Phillips, had investigated the matter of the Trust Company, and it was incorporated, and duly organized, with a capital stock of $1,000,000, practically all of which was paid up; that it was a growing concern having a large and profitable business and branch offices in several of the leading cities of the United States, and was regularly paying annual or semiannual dividends out of its earnings on its capital stock; that its capital stock was listed and had a recognized market value on the stock exchanges of Chicago, New York, and other places; that its stock was a safe, substantial and conservative investment, and its stock already issued was invested in high-grade, gilt-edged, interest-bearing investments; that its stock was a safe, substantial and conservative investment and had paid dividends out of its earnings on said capital stock at 6 per cent or better for a number of years before that time and would, in the opinion of Phillips, continue so to do; that Phillips had known Jerome for a long time and he was a reputable, responsible and well-known business man of financial standing and personal character and probity, and plaintiff could rely upon all statements made to her by Jerome with relation to said Trust Company and its stock; that he, Phillips, had such personal faith in said Trust Company that he himself had already invested $9,000 of his own money in its capital stock. The count further averred that Jerome then and there made similar representations to plaintiff and told plaintiff that the Trust Company was a Banking and Trust Company doing business under the laws of Delaware, with a capital of $1,000,000, nearly all paid up; that it was a growing concern, hav-

ing a large business; that its capital stock was a safe and conservative investment and would pay dividends out of its earnings on its capital stock in excess of 6 per cent per annum; that said stock had paid dividends for a number of years before at said rate, and that in Jerome's judgment it would continue to do so. The count repeated the other representations alleged to have been made by Phillips, and said they also were made by Jerome, and that Jerome told plaintiff that Phillips had invested $9,000 of his own money in said capital stock, and that plaintiff could rely on any statement made in relation to said matter by Phillips, and also all those made by Jerome, as being absolutely true. The count then alleged that Phillips then further stated that he had investigated the standing and financial business of said Trust Company and personally knew that the statements he and Jerome had made to plaintiff were true of his own knowledge; that they thereupon solicited her to invest in the stock of said Trust Company such funds as she then had and at future times might have to spare, and that she could rely upon said investment as being safe, conservative and proper. The count then alleged that plaintiff believed these statements because of the relation of trust and confidence existing between herself and her said banker, Phillips, and because of what Phillips and Jerome had said to her concerning the same; and that thereupon she subscribed for certain specified shares of the preferred stock and received certain specified shares of the common stock, and paid the Trust Company $5,000 therefor, and received a certificate for said preferred stock and another certificate for said common stock. The count then alleged that at the time said representations were made by said Phillips and Jerome (except the statement of the organization of the Trust Company as a corporation under the laws of Delaware with authority to issue $1,000,000 of preferred and common stock) said rep-

resentations were all untrue and were known by said
Phillips and Jerome at said time and by each of them
to be untrue, and that they were made for the sole pur-
pose of inducing plaintiff to invest her money in said
stock in order that the Trust Company and Phillips
and Jerome might profit by a division and partition
of the proceeds of said sale between themselves. The
count also specifically alleged that said stock was
worthless at the time she subscribed and paid for it,
and had no value, and that the Trust Company was
not an established and going banking Trust Company,
or concern; that it did not then have and had not
prior to that time maintained offices in the principal
cities of the United States; that its stock had never
been listed on the stock exchange of either New York
or Chicago; that it never had any market value at all;
and that it had never paid any dividends out of the
earnings of its capital stock; that its capital stock had
no market value, and was not a recognized and stand-
ard investment, and was without value; that the Trust
Company had no assets of any kind in excess of its
liabilities; that Phillips had not investigated it or its
business and financial condition thoroughly; and that
Phillips had not invested therein $9,000; that its capi-
tal stock was not at that time invested in gilt-edged,
interest-bearing securities; that the only dividends the
Trust Company ever paid were paid in violation of law
out of funds received by it on the sale of its capital
stock; and that the capital stock so delivered to the
plaintiff, both preferred and common, has remained
worthless from thence hitherto. The count alleged
that said representations by Phillips and Jerome to
her were made solely and only for the purpose of un-
loading on and selling to plaintiff said worthless stock,
and that the Trust Company and Phillips and Jerome
divided among themselves the proceeds of the sale of
said stock; that plaintiff was not advised as to the

proportions of said division, but believed that Phillips received 20 per cent in payment for his services and for said false representations made her to induce her to purchase the stock, and to compensate Phillips for using the trust and confidence plaintiff had in him. The count then alleged that when plaintiff discovered the fraud that had been perpetrated upon her, from that time on she had tried to induce Phillips and Jerome to refund her money, and tried to induce Phillips and Jerome to take the stock off her hands; and that she had tendered back to the Trust Company and to Phillips said certificates of stock and demanded that they pay her back her money, and they had each refused; and that she did not know where Jerome was, and was unable to make the tender to him, and that she therefore brought said stock into court to be taken by the Trust Company or Jerome or Phillips upon the payment of said sum to her.

It is said that one selling property has a right to puff its value, and that the purchaser will rely on such puffing at his own risk and peril, and that the statements set out in this count are merely puffing statements. It may very well be that that would be true if plaintiff was a stock broker or banker in the City of Chicago, accustomed to dealing in such transactions, or otherwise capable of taking proper care of her own interests; but in view of the allegations as to plaintiff's age, lack of education, secluded life on the farm, defective eyesight and hearing, all alleged to have been known to Phillips and Jerome when they made the statements, and the fact that her financial transactions had generally been conducted for several years through Phillips and that he had been trusted by her to advise her concerning the same, and to draw papers for her, and that a relation of trust and confidence existed between plaintiff and Phillips, and that Phillips knew that fact when he made these statements, we conclude that this rule as to puffing ought not to apply here.

All these defects of education, and of sight and hear-
ing are alleged to have been entirely known to Phil-
lips and Jerome when they made these representations
to her.  To permit such representations by them to her
to be treated as mere puffing between parties mentally
and physically able to compete with each other, would
be to place all ignorant and aged and infirm people
at the mercy of unscrupulous and ingenious vendors
of worthless property.  The case of *Van Horn v.
Keenan,* 28 Ill. 445, relied upon by appellees on this
question of puffing, recognizes weakness of mind, in-
ability to guard against imposition or to resist im-
portunity or undue influence, the infirmities of extreme
old age, and the like, as circumstances justifying courts
in relieving a party from the consequences of his yield-
ing to fraudulent designs; and it holds a party to a
losing bargain only when he is "capable of taking
care of his own interests."  To the same effect is
*Miller v. Craig,* 36 Ill. 109.  In *Nolte v. Reichelm,* 96
Ill. 425, an action for deceit, the fact that the plaintiff
was unable to read English and that defendant was
his intimate friend and had so transacted business for
plaintiff theretofore as to reasonably justify plaintiff
in relying upon him, and that plaintiff did rely upon
defendant, was held to relieve plaintiff from the duty
of personally examining into the truth of the repre-
sentations.  In *Hauk v. Brownell,* 120 Ill. 161, puffing
is permitted, but not where a fiduciary relation exists
between the parties.  The court therefore erred in
striking from the files the first additional count filed
January 16, 1917.  Said count so stricken, and the
other stricken counts, and the rulings of the court
thereon, were duly preserved by a bill of exceptions.
*Witteman Co. v. Goeke,* 200 Ill. App. 108.  There is at
least one count in this declaration which omits all
averments of the old age of the plaintiff and her in-
firmities, and her ignorance, and her reliance upon

Phillips, and we assume as to that count the representations were properly treated as mere puffing.

One count in the declaration alleged among the fraudulent statements that Jerome and Phillips stated to plaintiff that they would at any time reimburse her for any loss or damage she would sustain because of purchasing such capital stock through them. It is argued that this pleads a promise by Phillips and Jerome to plaintiff and that that count is in assumpsit, and that as plaintiff had not obtained any leave to change the form of action from case to assumpsit, the whole declaration was vitiated. We are of the opinion that this is an incorrect view of the purpose for which that allegation was inserted in the count referred to. It is not a count whereby plaintiff seeks to recover from Phillips and Jerome upon that promise. All that averment in that count means is that that promise was one of the representations and inducements held out for the purpose of deceiving plaintiff and inducing her to invest her money in this worthless stock.

But the rule that in an action for fraud and deceit the declaration must aver that the defendant knew that his representations were false, has been frequently qualified or modified or stated with a variation. Thus, in *Case v. Ayers,* 65 Ill. 142, an action for deceit, the court cited with approval *Stone v. Denny,* 4 Metc. (Mass.) 151, as holding that fraud will be inferred when a party makes a representation as to which he has no knowledge or information and no grounds for expressing his belief. In *Borders v. Kattleman,* 142 Ill. 96, the court said: "Nor is it important that it should be affirmatively found that the untrue representations should have in fact been known to appellant to be false. It is well settled that it is immaterial whether a party misrepresenting a material fact knows it to be false, or makes the assertion of the fact without knowing it to be true, for the af-

firmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other. Story's Eq. Jur. sec. 193; 2 Pomeroy's Eq. sec. 877; Bigelow on the Law of Fraud, 410 *et seq.;* Cooley on Torts (2nd Ed.), 582; *Thompson v. Lee,* 31 Ala. 292; *Indianapolis, P. & C. Railroad Co. v. Tyng,* 63 N. Y. 653; *Allen v. Hart,* 72 Ill. 104; *Fauntleroy v. Wilcox,* 80 Ill. 477; *Hicks v. Stevens,* 121 Ill. 186. So it has been held, that where the representations relate to facts which must be supposed to be within the defendant's knowledge, proof of their falsity is a sufficient showing of his knowledge that they were false. (Cooley on Torts, 583; [*Morse v. Dearborn*] 109 Mass. 593; [*Morgan v. Skiddy*] 62 N. Y. 319.) And so, a party selling property is presumed to know whether the representations he affirmatively makes in respect to it are true or false. If he knows them to be false it is a positive fraud, and if he makes them without knowing them to be true, for the purpose of inducing another to act upon them, it in equity amounts to fraud." *Miner v. Midbury,* 6 Wis. 295; *Smith v. Richards,* 13 Pet. (U. S.) 26; *McFerran v. Taylor,* 3 Cranch (U. S.) 270; *Glasscock v. Minor,* 11 Mo. 655. In *Coolidge v. Rhodes,* 199 Ill. 24, it is said that it is not always necessary to charge a vendor with fraud that he should know his statement to be false, if he has no good and reasonable ground to believe it to be true, and if the consequences are the same to the vendee as if he had such knowledge. True, that was a cause in equity, but the same doctrine has been stated in actions at law. In *Miller v. John,* 208 Ill. 173, an action for fraud and deceit, the court held that an instruction was properly given which said that if a person recklessly makes false representations of a matter about which he has no knowledge, for the fraudulent purpose of inducing another to rely upon his statements and to make a contract or to do an act to the

prejudice of such person who does rely and act upon such representations, suffering injury thereby, the party making the representations is legally liable. In *Smith v. Hoffman,* 122 Ill. App. 198, this court in a case of fraud and deceit where defendant had made statements that certain facts were true within his own knowledge, whereas he did not know those facts, although he may have believed them, the court held that it was a fraud for him to make those representations when he knew nothing about them; and that it was a falsehood for him to say that he knew the facts referred to; and that it was an imposition upon the plaintiff for him to state as a fact within his own knowledge, that of which he had no knowledge. In *Ames v. Thren,* 125 Ill. App. 312, the rule was stated by this court that to sustain an action for fraud and deceit it must be shown that the representations made were false and were known to be false by the party making them, or that they were representations of facts which the party claimed to know the truth about, when in fact he had no knowledge whatever about the subject. In *Herman v. Foster & Reynolds Co.,* 185 Ill. App. 97, the court held that making a representation to influence the conduct of the person to whom it is made, carries with it an assurance, necessarily implied from the situation, of the belief of the party making it in the truth of the affirmation; and that he takes it upon himself to warrant his own belief of the truth of that which he asserts; and if he makes a representation which he neither knows nor cares whether it is true or not, he can have no real belief in the truth of what he asserts, and is justly guilty of deception, and that the rule that one who makes a representation, not knowing whether it is true or false, or caring what the fact may be, and makes it recklessly, paying no heed to the injury which may result, commits a fraud for which an action for deceit will lie, is not an exception to but an application of the principle that the false representation must have

been knowingly made with intent to deceive. In *National Bank of Pawnee v. Hamilton,* 202 Ill. App. 516, an action for fraud and deceit, it is said that if one asserts a thing to be true of his own knowledge, when he does not in fact know whether it is true or not, his statement that he knows it to be true of his own knowledge is false; that if a person makes a positive statement that a thing susceptible of knowledge is true, it is implied that he knows it to be true of his own knowledge, and if he has no such knowledge, he is guilty of fraud. ' Under these qualifications of the rule some other counts here under consideration appear to be sufficient. The second original count alleged that the representations made by Phillips and Jerome were untrue and were known to be untrue by Phillips and Jerome, or if not known to be untrue by Phillips, they might have been known to him to be untrue if he had made a reasonable investigation with relation thereto; and that he made such representations recklessly, wantonly, and without knowledge of their truth, for the purpose of inducing plaintiff to invest her money in said worthless stock in order that he might profit by the sale thereof. The third additional count filed January 16, 1917, charged that the representations in that count to have been made to plaintiff by Phillips and by Jerome were recklessly made and were made without knowlege of their truth or of the truth of any or either of them by either said Jerome or said Phillips. This seems to comply with the modified rule above stated. The first amended additional count filed November 1, 1917, which made no allegation of plaintiff's ignorance, debility and trust in Phillips, and therefore permitted puffing, charged that the statements therein alleged to have been made to plaintiff by Jerome and by Phillips were known by Jerome and by Phillips to be wholly untrue; and that they were wholly untrue; and that neither Jerome nor Phillips

had ever made any investigation of said Trust Company sufficient to disclose its true worth or condition, or the value of its capital stock; and that said statements were made fraudulently, purposely and recklessly to plaintiff by said Jerome and Phillips for the purpose that she should rely upon them and believe the same, and should thereby be induced to purchase said capital stock of said Trust Company. This seems to state a case under the qualified rule above stated. The fourth additional count filed November 1, 1917, which stated plaintiff's disabilities very slightly, set up some further statements alleged to have been made by Phillips and Jerome to plaintiff not set out in the count we have stated in full. It was therein averred that they told her that Phillips had picked out this investment in said capital stock for her as a special favor and as especially choice, and as an unusual opportunity and advantage for an old lady to place her funds where Phillips knew they would be perfectly and absolutely safe, as the result of his personal investigation into the affairs of the Trust Company and the knowledge of the same acquired by him; and that count alleged that said representations and statements so made to her by Phillips and Jerome were wholly untrue and were made fraudulently, purposely and recklessly to plaintiff by Phillips and Jerome for the purpose of defrauding and cheating her; and that Phillips and Jerome knew that said statements and each and every of them were wholly untrue. This count also states a cause of action.

There are other counts in the three declarations before the court which will be found to state a cause of action under the principles hereinabove stated, but the court below can make the proper application without our discussing them in detail. Other errors outside of the pleadings are assigned and argued earnestly by counsel for plaintiff, but we deem it unnecessary to dis-

cuss them. The judgment is reversed and the cause is remanded for further proceedings in harmony with this opinion.

*Reversed and remanded.*

MR. PRESIDING JUSTICE NIEHAUS took no part.