**Frederick G. Klee, Appellant, v. Chicago Trust Company, Appellee.**

**Gen. No. 38,424.**

Opinion filed February 19, 1936.

Rehearing denied March 5, 1936.

FREDERICK W. JANSON, of Chicago, for appellant.

SIMS & STRANSKY, of Chicago, for appellee; OTTO W. BERG, of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal by Frederick G. Klee, plaintiff, from a decree of the superior court dismissing his bill of complaint for want of equity and judgment for costs against the plaintiff upon a report of a master in chancery.

No questions are being raised upon the pleadings. It is claimed by plaintiff that one Nat Malnick was a

real estate agent of Harry Schwartz, deceased, of whose estate defendant is the executor; that the property described in a certain contract was represented to have been situated in Gary, Indiana, on the corner of the intersection of two full section lines and that one of the streets abounding thereon was a boulevard with an electric line and zoned for business purposes; that all of the representations so made to him were false and untrue; that he relied upon the representations so made in entering into the contract hereby sought to be rescinded.

It is further claimed by plaintiff that the said representations were misrepresentations as to the present, existing and material facts and were made to induce him to enter into the said contract; that the person making the representations either knew that they were untrue or spoke with reckless indifference of the truth or was under a special duty to know the truth; that plaintiff had no knowledge of the falsity of the representations and acted in reliance thereon and that he did not receive that for which he had bargained.

Defendant contends that the contract in the case at bar was entered into by and between the plaintiff and Harry Schwartz, since deceased, on December 4, 1925; that suit for the rescission of same was instituted on March 24, 1931, on the ground of fraud; that the value of the land had decreased from 50 to 60 per cent in the interim and that no action was taken by the plaintiff for the rescission of the contract until after the death of Harry Schwartz, the vendor; that as a result thereof plaintiff is guilty of laches.

It appears from the evidence that Harry Schwartz was the sole owner of the Home Builders & Developers Organization and that Nat Malnick was a salesman for that organization and that a certain contract was entered into between the plaintiff and the Home Builders & Developers Organization through the solicitation of the said Malnick.

It further appears from the evidence that in selling
this land to the plaintiff, Malnick wrote on plaintiff's
copy of the contract the words, ''Section line, boule-
vard, electric line'' and ''business''; that there were
two copies of the contract and that Mr. Malnick did
not write in ''Section line, boulevard, electric line''
and ''business'' on the other copy of the contract; that
Malnick told plaintiff that Gary was going to be a big
town—put up steel mills and tin mills and that Mr.
Insull was going to put up a big power plant and hire
about 5,000 people; that Malnick gave the plaintiff a
receipt book and told him to bring it down every time
he came to make a payment; that Malnick also said
that a lot like this was a valuable lot like 63rd and
Halsted streets or Madison and State streets and that
such last named property was sold for $10 a foot and
now it is worth over $10,000 a foot and we cannot even
buy it; that Malnick also told plaintiff that he could
double his money if he wanted to sell the lot at any
time and that he should give him, Malnick, the resale.

Plaintiff's mother testified that she talked the mat-
ter over with the plaintiff many times and told him
that she thought he paid too much for the property;
that she told plaintiff she thought he had been cheated.

Frederick Klee, the plaintiff, was permitted to tes-
tify without objection and he stated that the first time
information came to him that Clinton street was not
a section line was about the first part of September,
1930; that he went to Gary one Sunday afternoon and
found that Clinton street was not a section line.

When the matter came on before the chancellor
with the report of the master, it was agreed that both
plaintiff's copy of the contract and defendant's copy
of the contract contained the following provisions:

''Second party expressly agrees that all representa-
tions affecting or relating to said sale and to this con-
tract and to said property are expressed herein and
that no waiver or modification of this contract shall be

claimed or be of any force or effect unless reduced to writing and signed by second party and by first party, by some agent of first party thereunto duly authorized; and that salesmen of first party have no authority to modify this contract in any manner."

According to the evidence, at the time the contract was signed, plaintiff said to Malnick:

"Why Mr. Malnick, you have not included in the contract—(unfinished) I see that it is not inserted in this contract that 5th Avenue is a section line, boulevard, electric line or that the street is 108 feet wide, and it is not on there that Clinton Street is a section line." Thereupon the salesmen wrote those words on the plaintiff's copy of the contract.

The evidence further shows that plaintiff signed the contract and paid Malnick $3,250 as a down payment on the purchase price.

According to the terms of the contract the Home Builders and Developers Organization agreed to convey to plaintiff a parcel of real estate 52 feet by 111 feet located on the corner of Clinton street and Fifth avenue in Gary, Indiana, for a total consideration of $6,500, $3,250 of which was paid at the time plaintiff signed the contract and the remainder of which was to be paid in monthly instalments of $25 each until the balance had been completely paid and that plaintiff would then become entitled to a deed to said premises; that plaintiff also obligated himself to pay all taxes and special assessments thereafter levied on the premises.

It appears from the evidence that from the date of the execution of the contract up until June 10, 1930, plaintiff paid to Harry Schwartz the additional sum of $476.98 in instalments of $25; that in September, 1930, plaintiff's uncle who lived about five miles from Gary, visited plaintiff and he learned for the first time from his uncle that neither Clinton street nor Fifth avenue

in Gary, Indiana, were section lines; that plaintiff then visited Gary, inspected the property he had purchased and found that it was some distance away from the nearest section line; that Clinton street adjoining the property in question had not as yet been cut through as a thoroughfare; that the buildings in the vicinity were wooden frame shacks in a dilapidated condition with a schoolhouse and small gasoline station some distance away; that surrounding plaintiff's lot were about 30 acres of land containing four or five portable schoolhouses; that neither of the streets adjoining the property were section lines, nor was 5th avenue a boulevard; that on 5th avenue in the block in which plaintiff's property was located were two frame residences and that no business property had been erected.

After inspecting the property plaintiff immediately engaged an attorney to assist him in making an investigation and some settlement with the defendant if the facts warranted it. Plaintiff's bill of complaint was filed March 24, 1931.

Before the master, plaintiff's copy of the contract was received in evidence, upon the bottom of which was drawn a plat with the street corner designated thereon, showing that the lots purchased by plaintiff were located on a double section line corner and that Clinton street was a section line and that 5th avenue was a boulevard as represented by defendant's agent who was selling the property.

In the report of the master which was approved by the chancellor he found that the plaintiff was entirely inexperienced in business matters; that he had very little education at the time of the transaction in question and was employed as a laborer in a dairy; that Malnick represented to plaintiff that the lot in question was located on a double section line corner, that Clinton street was a section line and that Fifth avenue

was a boulevard; that the contract provided in part as follows:

"Second party expressly agrees that all representations affecting or relating to said sale and to this contract and to said property are expressed herein and that no waiver or modification of this contract shall be claimed or be of any force or effect unless reduced to writing and signed by second party and by first party, by some agent of first party thereunto duly authorized; and that salesmen of first party have no authority to modify this contract in any manner.

"Second party expressly states that second party knows the contents of this contract and also that second party has examined the location of said property and finds the same to be as shown on the diagram below."

From these two clauses in the contract the further finding was made:

"That under the terms of said contract said statements were not binding upon said Home Builders & Development Organization; . . . " If that were true, to hold that one who by his fraud induces another to sign a contract which contains a clause that no fraud has been committed, it would protect every scoundrel and confidence man in his nefarious schemes. All he would have to do, by his fraud and deception, would be to obtain the signature of his victim to the contract and he would be safe from interference. In other words, by his own fraud he would protect himself from the consequences of the fraud which he commits. As was well stated in the case of *Miller v. Nydick,* 254 Ill. App. 584, wherein the court at page 587, said:

"To hold that one by fraudulent representations procures the signature of another to a contract will be immune from a suit to rescind the same because the contract which itself was obtained by fraud states that no fraudulent representations were made, would para-

lyze the arm of a court of equity. Such is not the law. Fraud vitiates everything it touches, and a complainant is not precluded by reason of the fact that a defendant who defrauded him succeeded, as a part of the fraud, in getting a written statement that there was no fraud. This might show the skill of the operator and the gullibility of his victim, but a court of justice is not thereby estopped."

The master further found that Clinton street is not, as a matter of fact, a section line and Fifth avenue is not a boulevard; but further finds that the complainant had ample opportunity to make an inspection of the property within a reasonable time after the execution of said contract; that he waited more than five years before taking action; that in the meantime because of the depression the value of property had greatly depreciated; and furthermore, Harry Schwartz had died and the master therefore concludes that the complainant had been guilty of laches.

In approving the above finding the trial court was in error. The facts are that the plaintiff in this case was not familiar with the location of the lots which he purchased in Indiana or as to their value; that he was busy working in Chicago and that he relied upon the defendant's representations and that because he did not go within a reasonable time to Gary, Indiana, and find out for himself that he had been swindled that, consequently, he is charged with being guilty of laches.

The rule with regard to laches is that where a transaction takes place concerning the sale of property and the property is present, so that both have an equal chance of knowing with what they are dealing, then if defrauded the plaintiff will be precluded from relief if he does not take steps within a reasonable time thereafter to rescind the contract. But, where the property is distant so that at the time the transaction takes place he is unable to view the premises, he then

has a right to rely upon the statements made by the vendor of the property. There is no duty upon the purchaser to view the premises within any particular time and it will not amount to laches if he does not do so. It is only after he has the knowledge that he has been defrauded and delays in taking action that the rule as to laches becomes operative. As was said in our Supreme Court in *Borders v. Kattleman,* 142 Ill. 96, at page 103:

"Where the sale is of property at a distance, so that the purchaser has not the means at hand of ascertaining the truthfulness of the vendor's representations, the vendee may rely upon their truth, and have redress if they are shown to have been materially false. (*Smith v. Richards,* 13 Pet. 26; *Maggart v. Freeman,* 27 Ind. 531; *Harris v. McMurray,* 23 id. 9; *Ladd v. Pigott,* 114 Ill. 647; *Savage v. Stevens,* 126 Mass. 207.) Here, as it appears, appellee did not have the ability to make any proper examination of the land without further time. Appellant, it would seem, was imperious in his demand that the transaction be closed at once, having first induced appellee to believe, as before stated is shown by the evidence, that he was in danger of losing his money unless he took the Crozier note and mortgage."

In the case at bar because some five or six years intervened between the time of the sale and the time when suit was commenced, it is claimed that laches intervened and prevented relief. But the facts were that plaintiff was without knowledge of the fraud and it is only after full knowledge of fraud that laches is applicable. As was said in *Regan v. Grady,* 343 Ill. 423, 424:

"Delay will not bar relief where the complainant has been ignorant of the fraud as to which relief is asked, as the duty to institute suit arises only upon the discovery of the fraud, and a delay of several

months in filing the bill after the discovery of the fraud will not bar relief, where the complainant immediately notified the defendant of his intentions and no adverse party is prejudiced by the lapse of time between the discovery of the fraud and the institution of suit.''

In this case the first intimation of the fraud occurred about the month of September, 1930. Plaintiff immediately hired a lawyer and began making an investigation of the records in the engineer's office at Gary and from others, and several months later made a demand upon the defendant for the rescission of the contract. Suit was commenced in March, 1931. We do not think that this showed lack of diligence on the part of the plaintiff and he should not be prevented from having his relief in a court of equity because of such a short lapse of time.

We are satisfied from a review of the evidence that the fraud practiced upon the plaintiff was entirely proven and that all the allegations of his bill of complaint were sustained by the proof in the record. We are, therefore, of the opinion that the trial court erred in dismissing the bill for want of equity.

For the reasons herein given the decree of the superior court is reversed and the cause is remanded with directions to enter a decree in favor of the plaintiff not inconsistent with the views herein expressed.

*Judgment reversed and cause remanded with directions.*

HALL, P. J., and HEBEL, J., concur.